**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **CHRIMAR SYSTEMS, INC.,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **AASTRA TECHNOLOGIES LIMITED,** *et al.*, <br><br> **Defendants.** | **Case No.  6:13-CV-879-JDL** |
| **CHRIMAR SYSTEMS, INC.,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **ALCATEL-LUCENT, INC.,** *et al.*, <br><br> **Defendants.** | **Case No. 6:13-CV-880-JDL** |
| **CHRIMAR SYSTEMS, INC.,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **AMX, LLC,** <br><br> **Defendant.** | **Case No. 6:13-CV-881-JDL** |
| **CHRIMAR SYSTEMS, INC.,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **GRANDSTREAM NETWORKS, INC.,** <br><br> **Defendant.** | **Case No. 6:13-CV-882-JDL** |

| | |
|---|---|
| **CHRIMAR SYSTEMS, INC.,** *et al.***,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**SAMSUNG ELECTRONICS, CO.,** *et al.***,**<br><br>                    **Defendants.** | **Case No. 6:13-CV-883-JDL** |

## DEFENDANTS'[1] COMBINED MOTION FOR SUMMARY JUDGMENT<br>AND CLAIM CONSTRUCTION

---

[1] "Defendants" refers to and includes those Defendants joining this motion: Aastra Technologies, Ltd., Aastra USA Inc., Alcatel-Lucent USA, Inc., Alcatel-Lucent Holdings, Inc., AMX LLC, Grandstream Networks, Inc., Samsung Telecommunications America, LLC and Samsung Electronics, Co. Ltd.

# TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................. 1

II.   STATEMENT OF THE ISSUE......................................................................... 4

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ................................. 4

IV.   LEGAL STANDARDS ..................................................................................... 6

      A.    Claim Construction ................................................................................. 6

      B.    Summary Judgment of Noninfringement................................................. 6

V.    NONE OF THE ACCUSED PRODUCTS MEETS THE DISTINGUISHING
      LIMITATIONS.................................................................................................. 7

      A.    Properly Construed, The Distinguishing Terms Require Differentiating
            Each Piece Of [Ethernet Data] Terminal Equipment From Each Other
            Piece. ....................................................................................................... 8

            1.    Asset tracking and management is the purpose of the '012 patent............ 8

            2.    "Distinguish" does not appear in the '012 patent specification.................. 9

            3.    Proper construction of the "distinguishing" terms relies on the
                  intrinsic evidence. ....................................................................... 10

            4.    Chrimar's proposed constructions disregard the intrinsic evidence. ........ 13

      B.    None Of The Accused Products Associate Information Or Arrange
            Impedance To Differentiate The Claimed Piece of [Ethernet Data]
            Terminal Equipment From Each Other Piece Of [Ethernet Data] Terminal
            Equipment. ............................................................................................. 14

VI.   CONCLUSION................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**

*Advanced Cardiovascular Sys., Inc., v. Scimed Life Sys., Inc.*,
    261 F.3d 1329 (Fed. Cir. 2001) ................................................................................... 4, 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................................ 6

*Gemalto S.A. v. HTC Corp. et al.*,
    No. 2013-1397, 2014 U.S. App. LEXIS 11520 (Fed. Cir. June 19, 2014) ......................... 9

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004) ......................................................................................... 6

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    134 S. Ct. 2111 (2014) ................................................................................................... 4, 7

*Mirror Worlds, LLC v. Apple, Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012) ......................................................................................... 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ....................................................................................................... 7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ....................................................................... 6

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................................................... 6

**Statutes**

35 U.S.C. § 112 ..................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................... 6

## <u>INDEX TO DECLARATIONS AND EXHIBITS</u>

Peschel Decl.         Declaration of Leisa Peschel in Support of Defendants' Combined Motion for Summary Judgment and Claim Construction ("Peschel Decl.")

    Exhibit A        Relevant excerpts of the IEEE 802.3af Power over Ethernet ("PoE") standard

    Exhibit B        Relevant excerpts of Chrimar's infringement contentions against Alcatel

    Exhibit C        Relevant excerpts of Chrimar's infringement contentions against AMX

    Exhibit D        Relevant excerpts of Chrimar's infringement contentions against Samsung

    Exhibit E        Relevant excerpts of the September 26, 2008 Application that issued as U.S. Patent No. 8,155,012 ("the '012 patent")

    Exhibit F        Relevant excerpts of the May 4, 2009 Third Preliminary Amendment in the '012 patent prosecution history

    Exhibit G        Relevant excerpts of the April 3, 2009 Response to Notice of Non-Compliant Amendment in the '012 patent prosecution history

    Exhibit H        Relevant excerpts of the December 6, 2011 Amendment and Petition for Extension of Time in the '012 patent prosecution history

    Exhibit I        Relevant excerpts of the February 6, 2012 Corrected Notice of Allowability in the '012 patent prosecution history

    Exhibit J        U.S. Patent No. 5,406,260 ("the '260 patent")

    Exhibit K        Relevant excerpts of the February 5, 2008 Response to Office Action in the prosecution history of U.S. Patent No. 7,457,250 ("the '250 patent"; the direct parent of the '012 patent)

    Exhibit L        Tentative Claim Construction Ruling regarding the '250 patent claims in the Northern District of California, No. 4:13-cv-01300-JSW

Carlson Decl.         Declaration of Steven B. Carlson in Support of Defendants' Combined Motion for Summary Judgment and Claim Construction ("Carlson Decl.")

Exhibit A                Curriculum Vitae of Steven B. Carlson

Alcatel Decl.            Declaration of Anish Verma in Support of Defendants' Combined Motion for Summary Judgment and Claim Construction ("Alcatel Decl.")

AMX Decl.               Declaration of Jim Pautler in Support of Defendants' Combined Motion for Summary Judgment and Claim Construction ("AMX Decl.")

Chambers Decl.          Declaration of David Chambers in Support of Defendants' Combined Motion for Summary Judgment and Claim Construction ("Chambers Decl.")

    Exhibit 1           Relevant excerpts of Chrimar's infringement contentions against Aastra

Grandstream Decl.       Declaration of Xiang Wei in Support of Defendants' Combined Motion for Summary Judgment and Claim Construction ("Grandstream Decl.")

    Exhibit 1           Relevant excerpts of Chrimar's infringement contentions against Grandstream

Samsung Decl.           Declaration of Jongsu Kim in Support of Defendants' Combined Motion for Summary Judgment and Claim Construction ("Samsung Decl.")

Defendants hereby move the Court to enter summary judgment that their accused products do not infringe any asserted claim of U.S. Patent No. 8,155,012 ("the '012 patent") because those products do not meet either of the properly construed "distinguishing" limitations.[2]

## I.    INTRODUCTION

The '012 patent purports to solve a specific problem—how to manage, track, and identify remotely located equipment on a network, such as a computer.   '012 patent (Dkt. No. 1-2) at 1:23–26.   Noting that the theft of networked computer equipment (and the information they contain) significantly adds to the equipment's total cost of ownership, the '012 patent provides solutions to minimize this cost.   *Id*. at 1:28–2:2.   Specifically, the '012 patent describes permanently identifying an "asset," such as a computer, "by attaching an external or internal device to the asset and communicating with that device using existing network wiring or cabling." *Id*. at 1:67–2:2.  The '012 patent refers to that device as the "remote module." *Id*. at 3:22–26.  The asset can then be managed, tracked, or identified by using the remote module to communicate a unique identification number, port ID, or wall jack location to the network monitoring equipment, or "central module." *Id*. at 6:7–13 and 8:66–9:4.  The '012 patent further discloses that "asset identification" may be done in a way "that does not use existing network bandwidth." *Id*. at 3:10–12.   These concepts are reflected in the patents' asserted claims, including independent claims 31 and 67 of the '012 patent, which require "distinguishing" specific devices:

---

[2] In an effort to narrow the issues, the Defendants have focused on the "distinguishing" terms and reserve the "impedance" term for the regularly scheduled *Markman*.   Defendants had originally requested that both terms be considered for this early procedure.   The two terms are independently case dispositive.

31.  An adapted piece of Ethernet data terminal equipment comprising:

an Ethernet connector comprising a plurality of contacts; and

at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector,

wherein *distinguishing information about the piece of Ethernet data terminal equipment* is associated to impedance within the at least one path.

67.   A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:

coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and

arranging impedance within the at least one path *to distinguish the piece of terminal equipment*.

'012 patent, claims 31 and 67 (emphasis added for the "distinguishing" terms).[3]

Defendants propose constructions that are consistent with the claims, the inventors' goals and description of the invention, and the remaining intrinsic record as using information to separately identify each asset in the network.   Particularly, Defendants propose that the "distinguishing" limitations require differentiating each piece of [Ethernet data] terminal equipment from each other piece of equipment on the network.   Chrimar's[4] proposed constructions of the "distinguishing" limitations render the claims incapable of asset tracking— the very problem the '012 patent purports to solve.  Claim constructions so untethered from the patent are untenable.

---

[3] Chrimar also asserts claims 35, 40, 42–43, 49–50, 52, 55–56, 65–66, 72–73, 77, 82, 88–90, and 106–107, each of which depends from either claim 31 or claim 67.

[4] "Chrimar" as used herein refers to Plaintiffs Chrimar Systems, Inc. d/b/a CMS Technologies and Chrimar Holding Company LLC.

Chrimar asserts that its claims cover the IEEE 802.3af Power over Ethernet ("PoE") standard.[5]   The 802.3af PoE standard was adopted in 2003, five years after filing of the provisional application to which the '012 patent claims priority and five years before filing of the application that issued as the '012 patent.  The PoE standard has absolutely nothing to do with asset tracking or theft protection.  Rather, PoE describes a standardized way to use existing Ethernet cabling to power Ethernet compliant devices.

In PoE, when a powered device ("PD"), such as an IP phone, connects to power-sourcing equipment ("PSE"), the PSE determines whether the IP phone is PoE-compatible by making a signature resistance measurement using direct current ("DC").  PoE § 33.2.5 (ALU0001459–60). The "signature" resistance for all PoE-compatible PDs is the same—25k$\Omega$ (±1.3k$\Omega$).  PoE § 33.2.5.2, 33.3.3–33.3.4, and Tables 33-8 and 33-14 (ALU0001461, 1464, and 1476–81). Optionally, the PSE may also apply a specific voltage to the network cable connecting the PD and measure the resulting current (or voltage) to determine the power classification of the PD. PoE §§ 33.2.6.2 and 33.2.7 (ALU0001465–68).  Neither the measurement of signature resistance nor the classification of current measurement differentiates each piece of terminal equipment from each other piece.  PoE §§ 33.2.5.2 and 33.2.7 (ALU0001461 and 1467–68).  In other words, the measurements and classifications do not provide information to determine whether: (1) a connected device is an IP phone or another PD; (2) a connected device belongs to Mr. Smith or someone else; or (3) a device is in Mr. Smith's office or elsewhere. The implementation of PoE in Defendants' accused products does not meet the "distinguishing" limitation of each asserted claim.  Accordingly, Chrimar cannot meet its burden to prove that every element or step

---

[5] Relevant excerpts of the PoE standard, which are contained in IEEE Std. 802.3-2012, Clause 33, are attached to the July 28, 2014 Declaration of Leisa Peschel ("Peschel Decl.") as Ex. A and are herein cited as "PoE" with the relevant pinpoint citations.

of each asserted claim is met by Defendants' accused products, and as a matter of law, Defendants do not infringe, and summary judgment of non-infringement is appropriate. *See Advanced Cardiovascular Sys., Inc., v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014).

## II.       STATEMENT OF THE ISSUE

Each asserted claim contains a "distinguishing" limitation that requires differentiating each piece of terminal equipment from each other piece. Defendants' accused products do not have that differentiating capability. Are Defendants entitled to summary judgment on Chrimar's infringement claim because the accused products cannot meet the distinguishing limitations?

## III.      STATEMENT OF UNDISPUTED MATERIAL FACTS

1.       Chrimar has asserted independent claims 31 and 67. Each of the asserted independent claims includes one of the "distinguishing" limitations. All other asserted claims depend on claim 31 or 67.

2.       Chrimar alleges Defendants infringe the asserted claims because the accused products comply with the IEEE 802.3(af) and/or (at) Power Over Ethernet ("PoE") standard amendments. Chrimar has not alleged in its infringement contentions that any Defendant infringes the "distinguishing" limitations of the asserted claims under the doctrine of equivalents.

3.       Chrimar alleges that Defendants' accused products meet the requirements of "distinguishing information" in claim 31 and "at least one path to distinguish the piece of terminal equipment" in claim 67 due to compliance with aspects of the PoE standard. *See*; Alcatel Decl. ¶ 3; AMX Decl. ¶¶ 3 & 5; Chambers Decl. ¶¶ 3–4 & Ex. 1; Grandstream Decl. ¶¶ 3–4 & Ex. 1; and Peschel Decl., Exs. B–D (excerpts of Chrimar's infringement contentions against Alcatel, AMX, and Samsung).

4

4.      Defendants' implementation of the PoE standard does not provide the capability to differentiate a device on the network from each other device on the network.  *See* Carlson Decl. ¶¶ 12–13; Alcatel Decl. ¶ 4–5; AMX Decl. ¶ 5–6; Chambers Decl. ¶ 5–6; Grandstream Decl. ¶ 6–7; and Samsung Decl. ¶ 5.

5.      According to the PoE standard, when a powered device ("PD") connects to power-sourcing equipment ("PSE"), the PSE determines whether a PD is PoE-compatible and should receive power.  PoE § 33.2.5 (ALU0001459); *see also* Carlson Decl. ¶ 8.

6.      The PSE makes that determination by applying a direct current ("DC") voltage to the cable connected to the PD and measuring the resultant current (or resultant voltage).  PoE § 33.2.5.1 (ALU0001459–60); *see also* Carlson Decl. ¶ 8.

7.      The PSE uses the resultant current (or voltage) in the voltage band of 2.70 Volts to 10.1 Volts to determine the resistance of the circuit.   PoE § 33.2.5.2 and Table 33-14 (ALU0001460–61, and ALU0001481); *see also* Carlson Decl. ¶ 8.

8.      The "signature" resistance for all PoE-compatible powered devices is 25k$\Omega$ ($\pm$1.3k$\Omega$). PoE § 33.2.5.2, 33.3.3–33.3.4, and Tables 33-8 and 33-14 (ALU0001461, 1464, and 1476–81); *see also* Carlson Decl. ¶ 9.

9.      Once a PSE accepts a PD, the PSE may optionally attempt to determine the PD's consumption range.  PoE § 33.2.6.2 (ALU0001465–66).  To do so, the PSE applies a voltage to the network cable connected to the PD and measures the resultant current (not impedance).  PoE § 33.2.7 (ALU0001467–68).  The particular steady-state current measured by the PSE indicates that the PD has one of four power classifications.  PoE § 33.2.6.2, Tables 33-9, 33-10 and 33-11 (ALU0001465–67); *see also* Carlson Decl. ¶¶ 10–11.

5

## IV.     LEGAL STANDARDS

### A.     Claim Construction

The words of a claim are generally construed to have their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Sources that show what a person of skill in the art would have understood a term to mean include: "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).  Of these sources, the specification is often the single best guide to the meaning of a disputed term because a person of ordinary skill in the art is deemed to have understood the claim term in the context of the inventors' description of what they invented.  *Id.* at 1313 and 1315.  And, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317.

### B.     Summary Judgment of Noninfringement

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant is entitled to judgment as a matter of law where the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof.  *Celotex*, 477 U.S.

at 323.  Chrimar has the burden to prove that all elements of an asserted device claim are present in each accused product.  *Advanced Cardiovascular*, 261 F.3d at 1336.  In the case of an asserted method claim, it is Chrimar's burden to prove that each Defendant performs all of the steps in the claimed method.  *Limelight*, 134 S. Ct. at 2117 ("[A method] patent is not infringed unless all the steps are carried out.");  *Mirror Worlds, LLC v. Apple, Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012).  Summary judgment of noninfringement is therefore proper if Chrimar fails to prove the existence in the accused products of a claimed element for an asserted device claim or the performance of a claimed step for an asserted method claim.

## V.  NONE OF THE ACCUSED PRODUCTS MEETS THE DISTINGUISHING LIMITATIONS.

| Claim Term | Defendants' Proposed Construction | Chrimar's Proposed Construction |
|---|---|---|
| "distinguishing information about the piece of Ethernet terminal equipment" (claim 31) | information to differentiate each piece of Ethernet data terminal equipment from each other piece of Ethernet data terminal equipment | information to distinguish the piece of Ethernet data terminal equipment from at least one other piece of Ethernet data terminal equipment |
| "to distinguish the piece of terminal equipment" (claim 67) | to differentiate each piece of terminal equipment from each other piece of terminal equipment.[6] | to distinguish the piece of terminal equipment having an Ethernet connector from at least one other piece of terminal equipment having an Ethernet connector. |

As set forth below, Defendants' proposed constructions are consistent with the clear, unequivocal teachings of the specification and prosecution history of the '012 patent, as well as statements the patentee made to the Patent Office, including in the prosecution of its direct parent.  In contrast, Chrimar's proposed constructions impermissibly expand the scope of the

_____

[6] Defendants believe that if the "distinguishing" terms are not construed as proposed herein (*i.e.*, where the scope of what "distinguishing" means is clear), the terms are indefinite.  *See generally Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014).

claims beyond the teachings of the specification and are simply unworkable.  Once properly construed, Chrimar's infringement allegations must fail as a matter of law.  There is no dispute that the PoE standard does not differentiate each piece of connected data terminal equipment from another.

> **A.**    **Properly Construed, The Distinguishing Terms Require Differentiating Each Piece Of [Ethernet Data] Terminal Equipment From Each Other Piece.**

> **1.**    **Asset tracking and management is the purpose of the '012 patent.**

The invention described in the '012 patent specification is far removed from the PoE devices upon which Chrimar is attempting to read their claims.  The problem the '012 patent attempts to solve is the tracking and management of network assets, which is complicated by the fact that employees typically have more than one asset and employees are routinely moved from one different physical location to another.  '012 patent at 1:37–42.  Exacerbating the problem are the unauthorized movement of assets, the reconfiguration of assets, and the theft of assets.  *Id*. at 1:34, 43, and 46–47.  Typically, an organization is "limited to relying on databases that correlate the network identification of an asset to where that asset should be located, not where the asset actually is located."  *Id*. at 1:55–57.  However, asset tracking and management software "is generally incapable of detecting the electrical connection status of equipment, it cannot detect the physical location of equipment, the identifying name of the equipment is not permanent, and the monitored assets must be powered up."  '012 patent at 1:61–65.

The '012 patent presents a solution to the asset tracking and management problem that "permanently identif[ies] an asset by attaching an external or internal device to the asset…."  '012 patent at 1:66–2:2.  Other purported advantages of the disclosed invention over prior art included the ability to "provide a further means in which a networked device may also be identified by a unique identification number using the existing network wiring or cabling,"

8

"provide an identification system that is easily and inexpensively implemented in an existing network system," "interrogate[] the devices connected to a network and block[] communications with unauthorized devices," and "provide a means for asset identification that does not use existing network bandwidth." '012 patent at 2:22–25, 2:30–32, 2:56–57, and 3:10–14.

With that background, the specification then discloses four embodiments—one embodiment that "illustrates the general teachings of the invention," i.e., "achieving identification of electronic computer equipment associated with a computer network" and three specific embodiments—that repeatedly reemphasize that the purported invention was directed towards identifying specific pieces of equipment individually. *See* '012 patent at 4:24–31, 4:46–47, 6:7–9 ("a preprogrammed unique identification number"), 9:1–9, 10:27–30, 11:10–13, 11:57–61, 12:48–13:63, 14:40–52, 15:33–42, and 16:57–64; *see also Gemalto S.A. v. HTC Corp. et al.*, No. 2013-1397, 2014 U.S. App. LEXIS 11520, at *10–12 (Fed. Cir. June 19, 2014) (affirming the district court's construction requiring all program memory be on a single chip when "[t]he specification demonstrates that the entire purpose of the invention was to enable the application to be stored within the memory on the chip of the integrated circuit card").

## 2.   "Distinguish" does not appear in the '012 patent specification.

The term "distinguish," let alone "distinguishing information," does not appear in the '012 patent specification.  The concept of "distinguishing" first appeared in two dependent claims filed as part of the '012 application on September 26, 2008.  *See* Peschel Decl., Ex. E (relevant excerpts of application).  At the time, the two originally filed independent claims of the '012 patent were directed towards a system and method for "conveying information on a network having objects," and dependent claims 27 and 64 further narrowed "information" as "information [] utilized to distinguish between objects."  *Id*. at 37, 39–41, & 43.  The claims evolved through a series of mostly preliminary amendments to later require, for example, "each object is a piece of

Ethernet equipment and the information can be utilized to distinguish between [different][7] pieces of Ethernet equipment," until the concept of "distinguishing" was firmly rooted in all asserted independent claims.  *See, e.g.*, Peschel Decl., Ex. G, April 3, 2009 Resp. to Not. of Non-Compliant Am. at 7, 13, 17, 21, & 25; *see also* Peschel Decl., Ex. H, December 6, 2011 Am. and Pet. For Ext. of Time at 13 (adding claim 491 which issued as claim 67 and included the "distinguishing" limitation).  In fact, to cement the term's importance, the examiner's February 6, 2012 Corrected Notice of Allowability attached an Examiner's Amendment that added the word "distinguishing" in the phrase "distinguishing information" of claim 31.[8]  Peschel Decl., Ex. I at 5 (claim 455 issued as claim 31).  Only after that amendment were the claims allowed.

### 3. Proper construction of the "distinguishing" terms relies on the intrinsic evidence.

The specification does not particularly describe the limitations that were added by amendment nearly ten years after the original filing of the specification, but the overall disclosure of the invention does provide guidance as to how "distinguishing" should be construed.[9]  In the Background of the Invention under the heading "Technical Field," the applicants noted that the "invention relates generally to computer networks and, more particularly, to a network management and security system for managing tracking, and identifying remotely located electronic equipment on a network."  '012 patent at 1:23–26.  As

---

[7] A separate preliminary amendment was filed to add the word "different."  Peschel Decl., Ex. F, May 4, 2009 Third Preliminary Am. at 7, 13, 17, 21, & 25.

[8] This amendment was apparently discussed during a telephone interview between the examiner and patentee's counsel; however, no summary of the substance of that interview is included in the file history.

[9] Defendants note that Chrimar's proposed constructions of the "distinguishing" terms purport to extend the scope of the claims well beyond the disclosure of the '012 patent.  If Chrimar's proposed constructions are adopted, Defendants reserve the right to challenge the validity of the claims for failure to comply with the enablement and written description requirements of 35 U.S.C. § 112.

noted above, the specification goes on to note the drawbacks of asset tracking software available at the time and described the advantages of the disclosed invention.

The '012 patent also contrasts the purported invention from prior art that measured electrical characteristics to address hardware theft. Specifically, the applicants referenced the prior art of one of its inventors (Cummings), U.S. Patent No. 5,406,260 ("the '260 patent"). '012 patent at 2:16–19; *see also* Peschel Decl., Ex. J, U.S. Pat. No. 5,406,260. The '260 patent issued in April 1995 and provided "a means of detecting the unauthorized removal of a networked device" using a current loop attached to each of the networked devices. *Id*. The network security system of the '260 patent included indicators that were capable of determining whether networked devices were disconnected. Peschel Decl., Ex. J, '260 patent at 5:27–32.

The '012 patent explains that the prior art's ability to measure current flow was "a means to monitor the connection status of any networked electronic device thus providing an effective theft detection/deterrent system." '012 patent at 2:7–21. The '012 patent's purported invention, however, was to "provide a further means in which a networked device may also be identified by a unique identification number using the existing network wiring or cabling as a means of communicating this information back to a central location." '012 patent at 2:22–26. This communication of information is key—the '012 patent is not merely taking a measurement to determine a yes or no condition of a networked device; it is having the networked device ***provide information*** concerning itself to the network.

The prosecution history of the parent patent to the '012 patent (U.S. Patent No. 7,457,250 ("the '250 patent")) confirms that providing information about the networked device was essential to the purported invention. In arguing over cited prior art during the prosecution of the '250 patent (that was before the ***same Examiner*** who ultimately amended the '012 patent claims

to add the term "distinguishing" to claim 31), applicants stated:   "Applicant's technique *for identifying equipment on a network* by varying the electrical characteristics across the wires cannot be implemented in De Bruycker." Peschel Decl., Ex. K, February 5, 2008 Response to Office Action at 10.   In view of the intrinsic evidence, a Northern District of California court tentatively construed "*information* about the first [second] piece of equipment/ an object" in the '250 patent to mean "information sufficient to, but not necessarily limited to, *identify or distinguish each piece of equipment* or object connected to the network." *Chrimar Sys., Inc. v. Cisco Sys.,* No. 4:13-cv-01300-JSW, Dkt. No. 179 at 6 (N.D. Cal. Feb. 3, 2014) (emphasis added) (attached as Ex. L to Peschel Decl.).   One of ordinary skill in the art considering all of this intrinsic evidence would have understood the "distinguishing" terms in the '012 patent to require differentiating each piece of data terminal equipment from each other piece of data terminal equipment; otherwise, the stated purpose of the invention—"managing, tracking, and identifying remotely located electronic equipment in a network"—would be completely defeated.

Defendants' constructions are also consistent with the other claims.  For example, claim 69 narrows claim 67 to require "arranging impedance within the at least one path to *uniquely distinguish* the piece of terminal equipment." '012 patent, cl. 69 (emphasis added).  Claim 69 is directed to  a narrow  embodiment, which  discloses the use of a "unique identification number." *See id.* at 6:7–8; 13:13–15; 13:28–30; and 14:35–8.   Defendants' proposed constructions encompass that embodiment, as well as other embodiments disclosed in the '012 patent that use other information, including location information, to "distinguish" one device from each other device.   *See e.g., id.* at 12:48–50 (using location information), 13:7–9 (location and configuration),  and 16:1-4 (object serial number, physical attributes, physical configuration, electronic attributes, software configuration, network attributes, and date of entry).

### 4.   Chrimar's proposed constructions disregard the intrinsic evidence.

In sharp contrast, Chrimar proposes constructions that are unsupported by the '012 patent and its history, and impermissibly seeks to broaden its claims to cover information that differentiates only "at least one piece of Ethernet data terminal equipment."  Chrimar's proposed constructions disregard the problem identified by the inventors—"managing, tracking, and identifying remotely located electronic equipment on a network."  *See* '012 patent at 1:23–26. The only way to manage, track, and identify remotely located electronic equipment—and the only way the '012 patent describes—is to provide certain information, whether it is an equipment identification number, port ID, or wall jack location, that enables network equipment to recognize each piece of terminal equipment as different from each other piece.  For example, in the first "general" embodiment, each of the computers in the network is associated with remote module circuitry to distinguish each computer from the other computers in the network.  '012 patent at 4:40–5:32, 6:7–30, and Fig. 3.   In this example, the remote module circuitry communicates "equipment identification information" to identify the existence and location of a remotely located computer.  '012 patent at 4:48–49.  In addition to the equipment identification information, the specification also discloses that "the principles of the invention may be readily extended to include the communication of more general information such as identification of the equipment processor type and the equipment hard drive capacity."  '012 patent at 4:49–53.  Thus, while communication of "distinguishing information" such as equipment identification information is essential to the invention, communication of more general information is not.  The '012 patent further discloses that port ID, wall jack location, or an identification signal could be used to differentiate a specific computer from each other piece of equipment on the network.  *See* '012 patent at 7:66–9:23 (describing the second embodiment).

13

Moreover, the Court should reject Chrimar's proposed constructions because they are inconsistent with the plain language of the claims and simply unworkable.  Not only do its constructions undermine the stated purpose of the invention, but they also render the terms "distinguishing" and "adapting" (or "adapted") virtually meaningless in the claims.  Under Chrimar's proposed construction, any "information" from any remote module—"adapted" or not—will be potentially "distinguishing" if there is any other remote module conceivable that does not provide the exact same information.  This would logically, and somewhat absurdly, lead to a situation where completely generic information provided from an "unadapted" piece of data terminal equipment could be found to be "distinguishing" (under Chrimar's proposal).  For example, under Chrimar's proposal, *any* "information" would distinguish a remote module from one that is broken or powered off and, therefore, lacks the capability to communicate.

### B.   None Of The Accused Products Associate Information Or Arrange Impedance To Differentiate The Claimed Piece of [Ethernet Data] Terminal Equipment From Each Other Piece Of [Ethernet Data] Terminal Equipment.

Chrimar asserts that Defendants infringe the asserted claims by virtue of their products complying with the PoE standard; however, there is no genuine issue of material fact that compliance with the PoE standard does not provide those products with the ability to differentiate each piece of terminal equipment from each other piece.  SUMF ¶¶ 1–4.  As set forth above, the signature resistance for all PoE-compatible powered devices is 25 k$\Omega$ ($\pm$1.3 k$\Omega$), and the devices are indistinguishable on that basis.  SUMF ¶ 8.  Once the PSE accepts a PD, the PSE may optionally attempt to determine the PD's power draw by applying a voltage to the cable connected to the PD and measuring the resultant current, which indicates that the PD has one of four power classifications.  SUMF ¶ 9.  No device in any of the four power classifications is distinguishable from any other device in that power classification.  *See id.*

14

Neither the signature resistance (which is the same for each PD within a margin of error) or the measured classification current provides a means to identify a device on the network or to "distinguish" the PD from each other [Ethernet data] terminal equipment on the network.  For example, no one PD can be separately distinguished from another such that the PD can be tracked when plugged and unplugged from the network.  In this way, as may be typical in an office environment where the same model PD phone is used, all PD phones would register with the same signature resistance (within a margin of error) and same power class such that no one phone could be differentiated from another.  Chrimar thus cannot prove that Defendants' accused products would meet the distinguishing limitation of each asserted claim and therefore fails to prove an essential element of its infringement claim.  For that reason, summary judgment that Defendants do not infringe any of the asserted claims of the '012 patent is warranted.

## VI.      CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court adopt their proposed constructions for the distinguishing terms and enter summary judgment that they do not infringe any asserted claim of the '012 patent.

Dated: July 28, 2014                                   Respectfully submitted,

                                                      */s/ Danny L. Williams*
                                                      Danny L. Williams—LEAD ATTORNEY
                                                      State Bar No. 21518050
                                                      Email: danny@wmalaw.com
                                                      Chris N. Cravey
                                                      State Bar No. 24034398
                                                      Email: cravey@wmalaw.com
                                                      Matthew R. Rodgers
                                                      State Bar No. 24041802
                                                      Email: mrodgers@wmalaw.com
                                                      Leisa Talbert Peschel
                                                      State Bar No. 24060414
                                                      Email: lpeschel@wmalaw.com
                                                      **WILLIAMS MORGAN, P.C.**

10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone: (713) 934-7000
Facsimile: (713) 934-7011

Michael E. Jones
State Bar No. 10929400
Email: mikejones@potterminton.com
**POTTER MINTON, P.C.**
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR DEFENDANTS-
COUNTERCLAIMANTS ALCATEL-
LUCENT USA INC. AND ALCATEL-
LUCENT HOLDINGS, INC.**


*/s/ Matthew S. Yungwirth with permission*
*By Michael E. Jones*
Matthew S. Yungwirth
msyungwirth@duanemorris.com
Woody Jameson
wjameson@duanemorris.com
DUANE MORRIS LLP
1075 Peachtree Street NE Suite 2000
Atlanta, GA 30309
Tel: 404-253-6900
Fax: 404-253-6901

Mark Comtois
mccomtois@duanemorris.com
Arvind Jairam
ajairam@duanemorris.com
DUANE MORRIS LLP
505 Ninth Street, N.W., Suite 1000
Washington, D.C. 20004
Tel: 202-776-7800
Fax: 202-776-7801

16

Michael E. Jones
State Bar No. 10929400
Email: mikejones@potterminton.com
**POTTER MINTON, P.C.**
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR AMX LLC**


 /s/ *Cono A. Carrano*
Cono A. Carrano (Lead Attorney)
ccarrano@akingump.com
Jin-Suk Park
jspark@akingump.com
Ashraf A. Fawzy
afawzy@akingump.com
Joseph E. Young
jeyoung@akingump.com
Patrick C. Reidy
preidy@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave NW
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Charles Everingham IV
Akin Gump Strauss Hauer & Feld LLP
911 West Loop 281, Suite 412
Longview, TX 75604
Telephone: (903) 297-7404
Facsimile: (214) 969-4343

**ATTORNEYS FOR DEFENDANTS
SAMSUNG ELECTRONICS CO., LTD.
AND SAMSUNG TELECOMMUNI-
CATIONS AMERICA, LLC**


*/s/ Jon B. Hyland*
Jon B. Hyland
State Bar No.  24046131
Munsch Hardt Kopf & Harr, P.C.

17

3800 Lincoln Plaza
500 N. Akard St.
Dallas, Texas 75201-6659
Ph: (214)855-7544
Fx:  (214)978-5360

**COUNSEL FOR DEFENDANS AASTRA
TECHNOLOGIES LIMITED AND
AASTRA USA INC.**

*/s/ Michael Strapp*
Michael Strapp (Lead Attorney)
Robert Frederickson
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
(617) 523-1231 (fax)
mstrapp@goodwinprocter.com
rfrederickson@goodwinprocter.com

Jennifer Parker Ainsworth
Texas State Bar No. 00784720
WILSON, ROBERSTON &
CORNELIUS, P.C.
909 ESE Loop 323, Ste. 400
Tyler, Texas 75701
(903) 509-5000
(903) 509-5092(fax)
jainsworth@wilsonlawfirm.com

**ATTORNEYS FOR DEFENDANT
GRANDSTREAM NETWORKS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on July 28, 2014. Any other counsel of record will be served by first class mail on this same date.

*/s/Michael E. Jones*