**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **CHRIMAR SYSTEMS, INC.,** *et al.*,<br><br>           **Plaintiffs,**<br><br>**v.**<br><br>**AASTRA TECHNOLOGIES LIMITED,** *et al.*,<br><br>           **Defendants.** | **Case No.  6:13-CV-879-JDL** |
| **CHRIMAR SYSTEMS, INC.,** *et al.*,<br><br>           **Plaintiffs,**<br><br>**v.**<br><br>**ALCATEL-LUCENT, INC.,** *et al.*,<br><br>           **Defendants.** | **Case No. 6:13-CV-880-JDL** |
| **CHRIMAR SYSTEMS, INC.,** *et al.*,<br><br>           **Plaintiffs,**<br><br>**v.**<br><br>**AMX, LLC,**<br><br>           **Defendant.** | **Case No. 6:13-CV-881-JDL** |
| **CHRIMAR SYSTEMS, INC.,** *et al.*,<br><br>           **Plaintiffs,**<br><br>**v.**<br><br><br>**GRANDSTREAM NETWORKS, INC.,**<br><br>           **Defendant.** | **Case No. 6:13-CV-882-JDL** |

| | |
|---|---|
| **CHRIMAR SYSTEMS, INC.,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **SAMSUNG ELECTRONICS, CO.,** *et al.*, <br><br> **Defendants.** | **Case No. 6:13-CV-883-JDL** |

## PLAINTIFFS' OPENING BRIEF ON CLAIM CONSTRUCTION

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     APPLICABLE LAW ............................................................................................... 2

   A.   Intrinsic Evidence ............................................................................................. 3

      1.   The claims and specification are the most relevant sources............................. 3

      2.   It is improper to import limitations from the specification. ............................. 3

      3.   The Court must examine the prosecution history to assess any impact on claim
         construction.................................................................................................... 4

   B.   Extrinsic Evidence ............................................................................................ 4

III.    DISPUTED TERMS AND PHRASES...................................................................... 5

   A.   "distinguishing information about the piece of Ethernet data terminal equipment" (claims
      31 and 50) / "to distinguish the piece of terminal equipment" (claims 67 and 72) ............ 5

   B.   "impedance" (claims 31, 35, 50, 67, 73, 77, and 72)........................................... 6

      1.   "alternating current"................................................................................... 8

      2.   "resistance".................................................................................................. 9

      3.   "in a circuit" ............................................................................................... 10

   C.   "arranging impedance within the at least one path" (claims 67, 73, 72, and 77) .............. 11

   D.   "terminal equipment" (claims 67, 72, 106) / "Ethernet data terminal equipment" (claims
      31, 35, 42, 43, 49, 50, 55) ................................................................................ 13

   E.   "wherein distinguishing information about the piece of Ethernet data terminal equipment
      is associated to impedance within the at least one path" (claim 31)................................ 15

   F.   "a method for adapting a piece of terminal equipment" (claim 67) / "an adapted piece of
      Ethernet data terminal equipment" (claim 31)................................................................ 17

IV.     CONCLUSION..................................................................................................... 20

## TABLE OF AUTHORITIES

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
 681 F.3d 1354 (Fed. Cir. 2010) ............................................................................... 18

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
 262 F.3d 1258 (Fed. Cir. 2001) ................................................................................. 5

*Digital Biometrics v. Identix, Inc.*,
 149 F.3d 1335 (Fed. Cir. 1998) ................................................................................. 4

*Enzo Biochem, Inc. v. Applera Corp.*,
 599 F.3d 1325 (Fed. Cir. 2010) ................................................................................. 9

*Free Motion Fitness, Inc. v. Cybex Intern., Inc.*,
 423 F.3d 133 (Fed. Cir. 2005) ........................................................................... 13, 15

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
 755 F.3d 1367 (Fed. Cir. 2014) ................................................................................. 8

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
 381 F.3d 1111 (Fed. Cir. 2004) ................................................................................. 2

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
 256 F.3d 1323 (Fed. Cir. 2001) ................................................................................. 3

*Inverness Med. Switzerland GmbH v. Warner Lambert Co.*,
 309 F.3d 1373 (Fed. Cir. 2002) ................................................................................. 4

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed. Cir. 2004) ................................................................................... 4

*Markman v. Westview Instruments, Inc.*,
 517 U.S. 370 (1996) ................................................................................................... 2

*Orion IP, LLC v. Staples, Inc.*,
 406 F. Supp. 2d 717 (E.D. Tex. 2005) ........................................................ 12, 14, 17

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) .................................................................... 2, 3, 4, 5, 8

*Renishaw PLC v. Marposs Societa' Per Azioni*,
 158 F.3d 1243 (Fed. Cir. 1998) ................................................................................. 4

*Rexnord Corp. v. Laitram Corp.*,
  274 F.3d 1336 (Fed. Cir. 2001) .................................................................................... 2

*Rhine v. Casio, Inc.*,
  183 F.3d 1342 (Fed. Cir. 1999) .................................................................................... 2

*Saunders Grp., Inc. v. Comfortrac, Inc.*,
  492 F.3d 1326 (Fed. Cir. 2007) .................................................................................... 4

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
  329 F.3d 823 (Fed. Cir. 2003) .................................................................................... 18

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) .................................................................................... 4

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997) .......................................................... 10, 12, 14, 17

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .................................................................................. 2, 9

## <u>TABLE OF EXHIBITS</u>

Exhibit A        United States Patent No. 8,155,012

Exhibit B        Declaration of Les Baxter dated July 9, 2014

Exhibit C        Dictionary of Communications Technology

Exhibit D        Encyclopedic Dictionary of Electronic Terms

Exhibit E        United States Patent No. 7,821,753

Exhibit F        Oxford Concise Science Dictionary

I.    **INTRODUCTION**

Pursuant to P.R. 4-5(a) and the Court's docket control order, (Doc. 42)[1], Plaintiffs ChriMar Systems, Inc. (d/b/a CMS Technologies) and ChriMar Holding Company LLC (together, "CMS" or "Plaintiffs") submit their opening brief on claim construction of U.S. Patent No. 8,155,012 ("the '012 Patent").   Plaintiffs assert the following '012 Patent claims against Defendants in the above-styled actions: independent claims 31 and 67 and dependent claims 35, 43, 50, 66[2], 73, 77, 88, 106[3], 42, 49, 55, 72, and 89 ("the asserted claims").

The asserted claims of the '012 patent are generally directed to a piece of terminal equipment with an Ethernet connector wherein that piece of terminal equipment is made distinguishable from at least one other piece of terminal equipment with an Ethernet connector. There are six disputed terms or phrases in the asserted claims of the '012 Patent.  One disputed phrase has already been addressed in Plaintiffs' Early *Markman* briefing, (Docs. 58, 70) and at the September 3, 2014 hearing.   Accordingly, Plaintiffs address the remaining five disputed terms or phrases in this brief.

Plaintiffs' proposals addressed herein are supported by the intrinsic evidence and principles of claim construction.    Defendants, on the other hand, propose a series of constructions that contradict the intrinsic evidence and improperly inject limitations into the claims in attempt to manufacture non-infringement arguments.   Accordingly, and for the reasons set forth below, Plaintiffs' proposals—most of which do not require the Court to go beyond accepting the plain and ordinary meaning of the claim language—should be adopted.

---

[1] All citations to the record herein are to the record in *ChriMar Systems, Inc., et al., v. Samsung Electronics Co., et al.*, Case No. 6:13-CV-883-JDL (E.D. Tex).
[2] Claim 66 is asserted with any one of the following claims: 31, 35, 43, and 50.
[3] Claim 106 is asserted with any one of the following claims: 67, 73, 77, and 88.

1

## II.   <u>APPLICABLE LAW</u>

Claim construction is a question of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  A construing court must ascertain "the meaning and scope of the relevant claims."  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).  A maxim of claim construction is that "claims should be so construed, if possible, as to sustain their validity."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (quoting *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999)).

The Federal Circuit has repeatedly stated that "the words of a claim 'are generally given their ordinary and customary meaning,'" *Id.* at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)), which is the meaning that a person of ordinary skill in the art would have understood the claim term to have as of the filing date of the patent application, *Id.* at 1313.  "[U]nless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill."  *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).

Nevertheless, a court is sometimes required to clarify beyond the bare claim language.  In such instances, it is "well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."  *Vitronics*, 90 F.3d at 1582; *see also Phillips*, 415 F.3d at 1315–17.  Indeed, the patent specification is "the single best guide to the meaning of a disputed term."  *Phillips*, 415 F.3d at 1315.  Claim construction is complete if, after examining the intrinsic evidence only, the Court is able to ascertain an unambiguous meaning for the term. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001). Although  extrinsic  evidence  such  as  dictionary  definitions,  treatises,  and  expert  witness

2

testimony may aid the Court in determining the meaning of claims, in general such evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1318.

### A.      Intrinsic Evidence

#### 1.      The claims and specification are the most relevant sources.

To determine the meaning of words in the claims, courts look first to the patent itself. *Phillips*, 415 F.3d at 1315–17.  "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Id.* at 1312 (internal quotations omitted).  "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."  *Id.* at 1314.  "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."  *Id.* Differences among the claim terms can also assist in understanding a term's meaning.  *Id.*  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id.* at 1314–15.

The specification is also relevant.  "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."  *Id.* at 1316 (internal quotation omitted).

#### 2.      It is improper to import limitations from the specification.

While this Court must review the patent specification, it is only for the purpose of interpreting the claims' stated terms, <u>not to incorporate particular features exhibited in the specification into the claim</u>. *See Saunders Grp., Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1332–33 (Fed. Cir. 2007)[4]; *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

---

[4] All emphasis herein is added unless otherwise noted.

As noted by the Federal Circuit, the respective roles of the claim language and the specification during the claim construction process are defined by two cannons which sometimes appear in tension: "(a) one may not read a limitation into a claim from the written description; but (b) one may look into the written description to define a term already in a claim limitation." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  The Federal Circuit has repeatedly held that courts may not import limitations from embodiments disclosed in the specification in order to limit or otherwise vary the meaning of the claim language.  *See, e.g.*, *Liebel-Flarsheim*, 358 F.3d at 906; *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327–28 (Fed. Cir. 2002); *Inverness Med. Switzerland GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1379 (Fed. Cir. 2002) ("It is improper to limit the claim based on a preferred embodiment of the invention.").

### 3.     The Court must examine the prosecution history to assess any impact on claim construction.

Similarly, "[t]he prosecution history is relevant because it may contain contemporaneous exchanges between the patent applicant and the PTO about what the claims mean." *Digital Biometrics v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998).  Although the prosecution history "lacks the clarity of the specification and thus is less useful for claim construction purposes," it "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention." *Phillips*, 415 F.3d at 1317.

### B.     Extrinsic Evidence

Although extrinsic evidence may "help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean," such evidence must be considered in the context of the

intrinsic record.  *Id.* at 1319.  Extrinsic evidence cannot be used to "vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history."  *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1269 (Fed. Cir. 2001).

## III.  **DISPUTED TERMS AND PHRASES**

**A.**  **"distinguishing information about the piece of Ethernet data terminal equipment" (claims 31 and 50) / "to distinguish the piece of terminal equipment" (claims 67 and 72)**

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| "information to distinguish the piece of Ethernet data terminal equipment from at least one other piece of Ethernet data terminal equipment" (claims 31 and 50) | "information to differentiate each piece of Ethernet data terminal equipment from each other piece of Ethernet data terminal equipment" (claims 31 and 50) |
| "to distinguish the piece of terminal equipment having an Ethernet connector from at least one other piece of terminal equipment having an Ethernet connector" (claims 67 and 72) | "to differentiate each piece of terminal equipment from each other piece of terminal equipment" (claims 67 and 72) |

The two asserted independent claims in which these phrases appear are reproduced below.

> **31**. An adapted piece of Ethernet data terminal equipment comprising:
> an Ethernet connector comprising a plurality of contacts; and
> at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector, wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path.

5

**67**. A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:

coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and

arranging impedance within the at least one path to distinguish the piece of terminal equipment.

Ex. A at cls. 31 and 67 (hereinafter, "the '012 Patent").

Plaintiffs' proposals for these phrases should be adopted for the reasons set forth in Plaintiffs' Early *Markman* briefing, (Docs. 58, 70), at the September 3, 2014 hearing, and in Plaintiffs' associated claim construction hearing presentation, which are incorporated herein by reference.

**B.** **"impedance" (claims 31, 35, 50, 67, 73, 77, and 72)**

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning.  No construction necessary. | "the resistance to the flow of alternating current in a circuit" |

The two asserted independent claims in which these terms appear are reproduced below.

**31**. An adapted piece of Ethernet data terminal equipment comprising:

an Ethernet connector comprising a plurality of contacts; and

at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector,

wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path.

6

> **67**. A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:
>> coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and
>> arranging impedance within the at least one path to distinguish the piece of terminal equipment.

'012 Patent at cls. 31 and 67.  At issue is whether this term should be accorded its plain and ordinary meaning or limited, as Defendants propose, to *resistance* to the flow of *alternating current in a circuit*.

Plaintiffs propose that this term be accorded its plain and ordinary meaning to one of ordinary skill in the art in light of the intrinsic evidence, which allows the impedance to be for opposition to flow of current, whether AC or DC current, in a path.  *See* Ex. B at ¶¶ 19-25, July 9, 2014 Decl. of Les Baxter (hereinafter, "7/9/14 Baxter Decl.").[5]  There has been no other definition set forth or disclaimer that alters the plain and ordinary meaning of this term or excludes opposition to DC current flow in a path.  *See Hill-Rom Servs., Inc. v. Stryker Corp.,* 755 F.3d 1367, 1371 (Fed. Cir. 2014) (reiterating that claims terms are to be given their plain and ordinary meaning to one of skill in the art when read in the context of the intrinsic record unless the applicant has acted as his own lexicographer or disavowed the full scope of the claim term).

---

[5] *Accord* Ex. F, *Oxford Concise Science Dictionary* 362-63 (3d ed. 1996) ("Impedance . . . the opposition of a circuit to the passage of a current).  Ex. C, Gilbert Held, *Dictionary of Communications Technology* 208 (2d ed. 1995) ("impedance (Z) The total opposition (resistance, inductance, and capacitance) to the flow current in an electrical circuit."); Ex. D, John E. Traister & Robert J. Traister, *Encyclopedic Dictionary of Electronic Terms* 300 (1984) ("Impedance: The total opposition to the flow of current in a circuit . . . . When the resistance and inductive reactance are known in a circuit, the impedance may be found by [an equation based on resistance and reactance]").

7

Yet, Defendants propose a construction with numerous flaws, which ignores the principles of claim construction, cuts away at the full scope of this term, and contradicts the intrinsic record—including the claims themselves.

### 1. "alternating current"

First, Defendants attempt to limit impedance to resistance to *alternating* current. Such a limitation has no support in—and in fact contradicts—the intrinsic evidence. For example, a series of claims depending from claim 67 explicitly mandate that "impedance" be for opposition to DC current flow. *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("the claims themselves provide substantial guide as the meaning of particular claim terms.") Dependent claims 82, 85, and 86 state:

> **82**. The method according to claim **67** wherein the arranging impedance within the at least one path comprises arranging impedance within the at least one path to have a first impedance for a first condition applied to the specific contacts followed by a second impedance for a second condition applied to the specific contacts.
>
> **85**. The method according to claim **82** wherein the first and second conditions applied to the specific contacts are current conditions.
>
> **86**. The method according to claim **85** wherein the current conditions are DC current conditions.

'012 Patent at cls. 82, 85-86; *see also* claim 76 (requiring "arranging the impedance within the at least one path to draw DC current.")   Thus, the dependent claims explicitly require arranging impedance to have an impedance for DC current conditions. Because impedance for DC current flow (a DC current condition) is within the scope of the dependent claims, it must be within the scope of the independent claims. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1334 (Fed. Cir. 2010) ("A person of ordinary skill would presume that a structure recited in a dependent claim will perform a function required of that structure in an independent claim.").

Defendants' proposal similarly contradicts the specification's description of embodiments which confirm that the plain and ordinary meaning of "impedance" includes impedance for DC current flow.   For example, the specification states that "[t]he present embodiment of the invention sources *DC current* from the 15 volt source to the remote modules 16."  '012 Patent at 5:40-41 (emphasis added); *see also id.* at 5:33-40, 7:17-21, 7:40-42; 7:48-50.  If DC current is sourced to the remote modules, it is nonsensical for Defendants to propose that the impedance of the remote modules or terminal equipment must be limited to opposing AC current flow.  *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996) (A construction that would exclude the preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support.").

Although unnecessary to look to extrinsic sources, extrinsic evidence underscores that Defendants' proposal contradicts the plain meaning of this term which allows impedance to be for opposing DC current flow.  *See, e.g.,* Ex. F, *Oxford Concise Science Dictionary* 362-63 (3d ed. 1996) (defining impedance as "[t]he quantity that measures the opposition of a circuit to the passage of a current . . . . In a d.c. circuit, this is the resistance (R) alone."); 7/9/14 Baxter Decl. at ¶¶ 19-25.    Defendant Alcatel-Lucent's own patent, entitled "DC HIGH POWER DISTRIBUTION ASSEMBLY" similarly confirms the same.  Ex. E at, U.S. Patent No. 7,821,753 at 8:20-24 ("Meter shuts are . . . low impedance resistors . . . , used in electrical utility meters (or other DC measurement devices . . . ."), 1:53-55 ("[w]hen DC power systems are first activated, high levels of transient current may be generated as a result of capacitor impedance").

### 2.    "resistance"

Second, Defendants propose that "impedance" be limited to *resistance* to the flow of current.  Defendants' "resistance" limitation causes confusion and should be rejected.  It is

unclear whether Defendants are referring to resistance (a) as used in the electrical engineering sense (where resistance indisputably equals voltage divided by current) or (b) as a synonym for opposition.  To the extent that Defendants are equating impedance to resistance in the electrical engineering sense, Defendants' proposal is fatally flawed.  One of ordinary skill in the art would understand that impedance is not limited to resistance in the electrical engineering sense. Resistance is just one component of impedance.[6]   *See* 7/9/14 Baxter Decl. at ¶¶ 23, 25 (explaining that impedance is equal to resistance plus reactance).[7]

### 3.       "in a circuit"

Finally, Defendants improperly attempt to limit impedance to resistance to the *flow* of current *in a circuit.*  The claims already specify that "distinguishing information about the piece of terminal equipment is associated to *impedance within the at least one path*" (claim 31) and require "arranging *impedance with the at least one path . . .*" (claim 67).  There is no support for Defendants' attempt to change the word "path" to "circuit."   Moreover, if Defendants' proposal is adopted, Defendants may argue that they do not infringe because the accused products do not comprise a complete, closed, and/or active electric circuit when they are sold, when the claims only require a path.   Such argument would necessitate further claim construction when it is unnecessary and improper to add Defendants' extraneous limitation to the claims.

Accordingly, Defendants' proposal—which improperly cuts away at the full scope of this term, contradicts the claims, excludes disclosed embodiments, and causes confusion—should be

---

[6] To the extent that Defendants are confusingly using "resistance" as a synonym for "opposition" in the electrical engineering sense, Defendants' proposal is unnecessary.  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction "is not an obligatory exercise in redundancy.")

[7] *Accord* Ex. F, *Oxford Concise Science Dictionary* 362-63 (3d ed. 1996) ("Impedance . . . the opposition of a circuit to the passage of a current); Ex. C, Held, *supra*, at 208 ("impedance (Z) The total opposition (resistance, inductance, and capacitance) to the flow current in an electrical circuit."); Ex. D, Traister & Traister, *supra*, at 300 ("Impedance: The total opposition to the flow of current in a circuit . . . . When the resistance and inductive reactance are known in a circuit, the impedance may be found by [an equation based on resistance and reactance]").

rejected.  There is nothing in the intrinsic evidence that alters the plain and ordinary meaning of this term, which need not even be construed.  Plaintiffs' proposal should be adopted.

### C. "arranging impedance within the at least one path" (claims 67, 73, 72, and 77)

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning.  No construction necessary. | Indefinite.[8] |

The only asserted independent claim in which this phrase appears is reproduced below.

> 67. A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:
>
> coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and
>
> arranging impedance within the at least one path to distinguish the piece of terminal equipment.

'012 Patent at cl. 67.

The issue here is what it means to arrange impedance within the at least one path.  "Impedance" is already the subject of claim construction.  *See supra* Section III(B).  And, "the at least one path" is already defined by the claim.  '012 Patent at 21:11-13 ("coupling at least one path across specific contacts . . . , the at least one path permits use of the specific contacts for

---

[8] In the parties' joint clam construction and pre-hearing statement pursuant to  P.R. 4-3, Defendants identify expected indefiniteness expert testimony that "[t]he specification is directed to varying impedance within the at least one path to differentiate each piece of data terminal equipment from each other piece of data terminal equipment.  If not construed accordingly, a PHOSITA would not have understood the scope of the terms nor the claim in which these terms occur."  (Doc. 69-2 at 5.)  However, Defendants do not actually propose a construction for this term.  To the extent that Defendants are argue for a construction in their responsive claim construction brief, Plaintiffs reserve the right to further address the same.

Ethernet communication . . . ."). Thus, the real issue is what it means to "arrange." The term "arranging"—and arranging impedance within the at least one path—means just what it says, is readily comprehensible, and does not require construction. When a claim term or phrase will be readily comprehensible to the finder of fact the term or phrase requires no construction. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction "is not an obligatory exercise in redundancy."); *Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) ("[A]lthough every word in a claim has a meaning, not every word requires construction."). Therefore, Plaintiffs' proposal should be adopted.

Defendants, however, have filed a letter briefing seeking leave to file a motion for summary judgment that claim 67 is indefinite in light of, *inter alia*, the phrase "arranging impedance within the at least one path to distinguish." (Doc. 74-1 at 2.) If Defendants' request is granted, Plaintiffs will address Defendants' indefiniteness contentions in response to their motion.

To the extent that Defendants alternatively seek a construction of "arranging" to mean "varying," Defendants' proposal should be rejected.[9] Such a proposal has no support in the intrinsic evidence (or elsewhere) and violates the doctrine of claim differentiation. For example, claim 74 depends from claim 67 and requires that "arranging impedance within the at least one path comprises arranging impedance within the at least one path to be variable." '012 Patent at cl. 74. Thus, arranging the impedance in claim 67 cannot be limited to varying the impedance. *See Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 133, 1351 (Fed. Cir. 2005)

---

[9] *See* Doc. 69-2 at 5 (Defendants refraining from proposing "varying" as a construction, but identifying expected testimony that this phrase is indefinite unless "arranging" is construed as "varying").

(holding that under the doctrine of claim differentiation, a dependent claim that required one cable confirmed that the independent claim was not limited to a one cable.)

Defendants' alternative proposal would amount to nothing more than an unsupported attempt to alter the meaning of "arrange" so that Defendants can later advance a non-infringement argument that "arranging the impedance" somehow requires the impedance to be changed, altered, or varied when the accused products are in operation.   Any such proposal should be rejected.

D.      **"terminal equipment" (claims 67, 72, 106) / "Ethernet data terminal equipment" (claims 31, 35, 42, 43, 49, 50, 55)**

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning.  No construction necessary. | "device at which data transmission originates or terminates" (claims 67, 72, 106)

"device at which data transmission originates or terminates  and that is capable of Ethernet communication" (claims 31, 35, 42, 43, 49, 50, 55) |

The two asserted independent claims in which these terms appear are reproduced below.

> **31**. An adapted piece of Ethernet data terminal equipment comprising:
> an Ethernet connector comprising a plurality of contacts; and
> at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector, wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path.

13

> **67**. A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:
>> coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and
>
> arranging impedance within the at least one path to distinguish the piece of terminal equipment.

'012 Patent at cls. 31 and 67.

These terms mean just what they say, are readily comprehensible, and do not require construction. When a claim term or phrase will be readily comprehensible to the finder of fact the term or phrase requires no construction. *U.S. Surgical*, 103 F.3d at 1568 (Claim construction "is not an obligatory exercise in redundancy."); *Orion IP*, 406 F. Supp. 2d at 738 ("[A]lthough every word in a claim has a meaning, not every word requires construction."). Therefore, Plaintiffs' proposal should be adopted.

Defendants' proposal should be rejected as an unsupported attempt to manufacture non-infringement loopholes. Defendants propose that "terminal equipment" be construed as a "device at which data transmission originates or terminates." Under such a construction, Defendants may argue that the terminal equipment of the asserted claims must facilitate data transmission for infringement to occur. Specifically, Defendants may take the position that they do not infringe because data transmission does not originate, terminate, or otherwise occur at the equipment when the accused products are sold or when the accused methods are performed. There is nothing in the intrinsic evidence that requires data transmission to originate, terminate, or otherwise occur at any specific point in time.

14

Moreover, dependent claim 106 confirms that a piece of terminal equipment need not even be *data* terminal equipment, as Defendants would argue under their proposed construction. Claim 106 states:

> **106**. The method according to any one of claims **67** through **104** wherein the piece of terminal equipment is a piece of Ethernet data terminal equipment.

'012 Patent at cl. 106.  Under the doctrtine of claim differentation, if dependent claim 106 is limited to Ethernet *data* terminal equipment, it is presumed that the Ethernet terminal equipment of claims 67-104 need not be *data* terminal equpment.  *See Free Motion Fitness, Inc.,* 423 F.3d at 1351.

Accordingly, Defendants' unsupported non-infringement loopholes, which contradict the intrinsic evidence, should be rejected.  Plaintiffs' proposal should be adopted for this readily comprehsible term.

**E.**   **"wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path" (claim 31)**

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning.  No construction necessary | Indefinite.<br><br>In the alternative to a finding that the following terms are indefinite, Defendants propose that "distinguishing information about the piece of Ethernet data terminal equipment" and "impedance" as used in this phrase have the same meanings as in their individually proposed constructions. |

The asserted independent claim in which this phrase appears is reproduced below.

> **31.** An adapted piece of Ethernet data terminal equipment comprising:
>> an Ethernet connector comprising a plurality of contacts; and
>> at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector, wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path.

'012 Patent at cl. 31.

The embedded phrase "distinguishing information about the piece of Ethernet data terminal equipment" is already the subject of a separate dispute addressed in the parties Early *Markman* Briefing and at the September 3, 2014 hearing. *See supra* Section III(A).   Similarly, the embedded term "impedance" is the subject of a dispute addressed *supra* Section III(B). Plaintiffs' proposal for these embedded terms and phrases should be adopted for the reasons previously set forth.

Thus, the remaining issue pertains to the meaning that should be accorded to the second half of this phrase: "*associated to* impedance *within the at least one path*."   This phrase contains simple words that are readily comprehensible and do not require construction.   When a claim term or phrase will be readily comprehensible to the finder of fact the term or phrase requires no construction.   *U.S. Surgical*, 103 F.3d at 1568 (Claim construction "is not an obligatory exercise in redundancy."); *Orion IP*, 406 F. Supp. 2d at 738 ("[A]lthough every word in a claim has a meaning, not every word requires construction.").   Plaintiffs' proposal should therefore be adopted.

Defendants, however, have filed a letter briefing seeking leave to file a motion for summary judgment that claim 31 is indefinite in light of, *inter alia*, the phrase "distinguishing

16

information . . . is associated to impedance" (Doc. 74-1 at 2.)  If Defendants' request is granted,

Plaintiffs will address Defendants' indefiniteness contentions in response to their motion.

**F.    "a method for adapting a piece of terminal equipment" (claim 67) / "an adapted piece of Ethernet data terminal equipment" (claim 31)**

| Plaintiffs' Proposal | Defendants' Proposal |
| --- | --- |
| These preambles are not limiting and have their plain and ordinary meaning. | These preambles are limiting and have their plain and ordinary meaning.<br><br>Defendants propose that "terminal equipment" and "Ethernet data terminal equipment," as used in these phrases have the same meanings as in their individually proposed constructions. |

At issue is whether Defendants' proposal to construe the preamble as limiting should be

rejected.[10]  Whether to treat a preamble term as a claim limitation is determined on the facts of

each case in light of the claim as a whole and the invention described in the patent.  *Am. Med.*

*Sys., Inc. v. Biolitec, Inc.*, 681 F.3d 1354, 1358 (Fed. Cir. 2010) (quoting *Storage Tech. Corp. v.*

*Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003)).   While there is no simple test for

determining when a preamble limits claim scope, the Federal Circuit has set forth some general

principles to guide that inquiry.  *Id.*   Generally, the preamble will not limit the claims.  *Id.*

However, the preamble may be construed as limiting if it recites *essential structure or steps*, or if

it is *necessary* to give life, meaning, and vitality to the claim.  *Id.*

The preamble should not be construed as limiting, however, when the claim body

describes a structurally complete invention such that deletion of the preamble does not affect the

structure or steps of the claimed invention.   *Id.* at 1358-59.  If the preamble is reasonably

susceptible to being construed to be merely duplicative of the limitations in the body of the claim

---

[10] To the extent that the Court adopts Defendants' proposal to construe the preambles, or any terms thereof, as limitations, Plaintiffs' proposals for the embedded terms "terminal equipment" and "Ethernet data terminal equipment" should be adopted for the reasons set forth *supra* Section III(D).

(and was not clearly added to overcome a prior art rejection), the Federal Circuit does not construe the preamble to be a separate limitation. *Id.* The Federal Circuit has held that the preamble has no separate limiting effect if, for example, the preamble merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention. *Id.*

The preambles of claims 31 and 67 state:

- "An adapted piece of Ethernet data terminal equipment comprising: . . . " (claim 31); and

- "A method for adapting a piece of terminal equipment, . . . " (claim 67).

As shown below, if the preambles were deleted, the body of claim 31 would still describe an adapted piece of Ethernet data terminal equipment, and the body of claim 67 would still recite steps for a method for adapting a piece of terminal equipment.

> **31.**
>
> an Ethernet connector comprising a plurality of contacts; and
> at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector, wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path.

18

**67**.

> coupling at least one path across specific contacts of the
> Ethernet connector, the at least one path permits use of
> the specific contacts for Ethernet communication, the
> Ethernet connector comprising the contact 1 through the
> contact 8, the specific contacts of the Ethernet connector
> comprising at least one of the contacts of the Ethernet
> connector and at least another one of the contacts of the
> Ethernet connector; and
> arranging impedance within the at least one path to distin-
> guish the piece of terminal equipment.

'012 Patent at cls. 31 and 67 (preambles removed from original).

As shown above, the body of claim 31 indisputably describes a piece of Ethernet data terminal equipment.  *See. e.g.,* '012 Patent at cl. 31 (" . . . an Ethernet connector . . .wherein distinguishing informaton about the piece of Ethernet data terminal equipment . . . .").  The body of claim 31 also necessarily describes *an adapted*  piece of Ethernet data terminal equipment. *See, e.g.,* '012 Patent at cl. 31 (". . . an Ethernet connector comprising a pluarlity of contacts . . . at least one path coupled across selected contacts, the selected contacts comprising [certain specific elements] . . . wherein distinguising information about the piece of  Ethernet data terminal equipment is associted to impedance within the at least one path.").  Claim 31's preamble merely gives a descrptive name to an invention that is completely set forth in the body of claim 31.  It is unncessary to give life, meaning, and vitality to claim 31 and recites no essential structure.

The body of claim 67 simlarly recites steps for adapting a piece of of terminal equipment. *See, e.g.,* '012 Patent at cl. 67 ("coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communcation, the Ethernet connector comprising [certain specific elements] . . . arranging impedance within

19

the at least one path to distinguish the piece of terminal equipment." Similar to claim 31, claim 67's preamble simply gives a descrptive name to a method that is completely set forth in claim 67's body. It is unncessary to give life, meaning, and vitality to the claim 67 and recites no essential steps.

Accordingly, Defendants' proposal to construe the preamble as limiting should be rejected.

IV.    **<u>CONCLUSION</u>**

For the reasons herein, Plaintiffs' proposals should be adopted. Defendants' proposals shoud be rejected.

Date:  September 22, 2014

**THE SIMON LAW FIRM, PC**
<u>/s/ Michael P. Kella</u>
Anthony G. Simon
Timothy D. Krieger
Benjamin R. Askew
Michael P. Kella
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, MO 63101
P. 314.241.2929
asimon@simonlawpc.com
tkrieger@simonlawpc.com
baskew@simonlawpc.com
mkella@simonlawpc.com

T. John Ward, Jr.
Texas State Bar No. 00794818
J. Wesley Hill
Texas State Bar No. 24032294
WARD & SMITH LAW FIRM
P.O. Box 1231
1127 Judson Road, Ste. 220
Longview, Texas 75606-1231
(903) 757-6400
(903) 757-2323 (fax)
jw@wsfirm.com

wh@wsfirm.com

**ATTORNEYS FOR PLAINTIFFS**
**CHRIMAR SYSTEMS, INC. d/b/a CMS**
**TECHNOLOGIES and CHRIMAR**
**HOLDING COMPANY, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was served upon all counsel of record this

22nd day of September, 2014 via the Court's CM/ECF system.

*/s/ Michael P. Kella*