**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CHRIMAR SYSTEMS, INC. d/b/a CMS TECHNOLOGIES AND CHRIMAR HOLDING COMPANY, LLC,** <br><br> vs. <br><br> **ALCATEL-LUCENT, INC. et al.,** | § § § § § § § § § § | **Civil No. 6:13-cv-880-JDL** |
| **CHRIMAR SYSTEMS, INC. d/b/a CMS TECHNOLOGIES AND CHRIMAR HOLDING COMPANY, LLC,** <br><br> vs. <br><br> **AMX, LLC,** | § § § § § § § § § § § | **Civil No. 6:13-cv-881-JDL** |
| **CHRIMAR SYSTEMS, INC. d/b/a CMS TECHNOLOGIES AND CHRIMAR HOLDING COMPANY, LLC,** <br><br> vs. <br><br> **GRANDSTREAM NETWORKS, INC.,** | § § § § § § § § § § | **Civil No. 6:13-cv-882-JDL** |
| **CHRIMAR SYSTEMS, INC. d/b/a CMS TECHNOLOGIES AND CHRIMAR HOLDING COMPANY, LLC,** <br><br> vs. <br><br> **SAMSUNG ELECTRONICS CO., LTD., et al.** | § § § § § § § § § § § | **Civil No. 6:13-cv-883-JDL** |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants'[1] Combined Motions for Summary Judgment and Claim Construction (No. 6:13-cv-880, Doc. No. 71; No. 6:13-cv-881, Doc. No. 73; No. 6:13-cv-882, Doc. No. 67; and No. 6:13-cv-883, Doc. No. 68)[2] ("Mot."). Plaintiff ChriMar Systems, Inc. d/b/a CMS Technologies and Chrimar Holding Company LLC filed a Response (Doc. No. 74)("Resp.") and Defendants filed a Reply (Doc. No. 76) ("Reply"). The Court held a hearing on September 3, 2014. For the reasons set forth herein, the Court adopts the constructions set forth below, and **DENIES** Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff alleges Defendants infringe Claims 31 and 67 of U.S. Patent No. 8,115,012 ("the '012 Patent").[3] The '012 Patent is titled "System and Method for Adapting a Piece of Terminal Equipment," and relates to tracking of devices that are connected to a wired network. More specifically, the '012 patent describes permanently identifying an "asset," such as a computer, "by attaching an external or internal device to the asset and communicating with that device using existing network wiring or cabling." '012 Patent at 1:67–2:2. The '012 patent refers to that device as the "remote module." *Id.* at 3:22–26. The asset can then be managed, tracked, or identified by using the remote module to communicate a unique identification number, port ID, or wall jack location to the network monitoring equipment, or "central module." *Id.* at 6:7–13 and 8:66–9:4. The '012 patent further discloses that "asset identification" may be done in a way

---

[1] Defendants include Alcatel-Lucent USA, Inc., Alcatel-Lucent Holdings, Inc., AMX LLC, Grandstream Networks, Inc., Samsung Telecommunications America, LLC, and Samsung Electronics Co., Ltd. Defendants Aastra Technologies, Ltd., and Aastra USA Inc have since settled. *Chrimar Systems, Inc. v. Aastra Technologies Limited,* No. 6:13-cv-879, Doc. No. 70.
[2] All citations hereinafter will be to the Docket in *Chrimar Systems, Inc. v Alcatel-Lucent, Inc*, No. 6:13-cv-880.
[3] Chrimar additionally asserts infringement of claims 35, 40, 42–43, 49–50, 52, 55–56, 65–66, 72–73, 77, 82, 88–90, and 106–107, each of which depends from either claim 31 or claim 67.

"that does not use existing network bandwidth." *Id.* at 3:10–12. These concepts are reflected in the patents' asserted claims, including independent Claims 31 and 67 as set forth below:

> 31. An adapted piece of Ethernet data terminal equipment comprising:
> an Ethernet connector comprising a plurality of contacts;
> and
> at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector,
> wherein *distinguishing information about the piece of Ethernet data terminal equipment* is associated to impedance within the at least one path.
>
> 67. A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:
> coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and
> arranging impedance within the at least one path to *distinguish the piece of terminal equipment*.

'012 patent, claims 31 and 67.

In its motion, Defendants present variations on the term "distinguishing"[4] for construction, and argue that summary judgment of non-infringement is warranted if the Court adopts its construction. Doc. No. 71. Plaintiff presented its proposed construction, as well as its position on infringement in its responsive brief. Doc. No. 74. The Court heard argument on September 3, 2014. A full claim construction hearing is set for October 30, 2014, and trial is set for September 2015.

---

[4] Defendants' letter brief originally requested, and the Court permitted, an early *Markman* on *two* disputed terms: (1) "distinguishing information about the piece of Ethernet data terminal equipment" / "to distinguish the piece of terminal equipment"; and (2) "impedance." Defendants' Motion, however, addresses only the "distinguish[ing]" terms. Defendants decided to reserve the "impedance" term for the full claim construction hearing if the case is not resolved by the Court's ruling on their Motion. *See* MOT. at 1 n.2; Doc. No. 61.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003). Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or

disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during

prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted)). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

### I. Disputed Terms

**"distinguishing information about the piece of Ethernet terminal equipment" (Claim 31)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "information to distinguish the piece of Ethernet data terminal equipment from at least one other piece of Ethernet data terminal equipment" | "information to differentiate each piece of Ethernet data terminal equipment from each other piece of Ethernet data terminal equipment" |

**"to distinguish the piece of terminal equipment"** (Claim 67)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "to distinguish the piece of terminal equipment having an Ethernet connector from at least one other piece of terminal equipment having an Ethernet connector" | "to differentiate each piece of terminal equipment from each other piece of terminal equipment" |

### A. The Parties' Contentions

Defendants argue that "[o]ne of ordinary skill in the art considering all of this intrinsic evidence would have understood the 'distinguishing' terms in the '012 patent to require differentiating each piece of data terminal equipment from each other piece of data terminal equipment; otherwise, the stated purpose of the invention—'managing, tracking, and identifying remotely located electronic equipment in a network'—would be completely defeated." MOT. at 12. In other words, "[t]he only way to manage, track, and identify remotely located electronic equipment—and the only way the '012 patent describes—is to provide certain information, whether it is an equipment identification number, port ID, or wall jack location, that enables network equipment to recognize each piece of terminal equipment as different from each other piece." Id. at 13. Defendants urge that Plaintiff's proposed constructions "[n]ot only . . . undermine the stated purpose of the invention, but they also render the terms 'distinguishing' and 'adapting' (or 'adapted') virtually meaningless in the claims." Id. at 14.

Plaintiff responds that "[t]his is a classic case of Defendants improperly attempting to import limitations from the preferred embodiment in the specification into the claims in order to avoid infringement." RESP. at 2. Further, "Defendants repeatedly state that their proposed construction is 'consistent' with the intrinsic record. However, in every case, a construction importing limitations from preferred embodiments would always be 'consistent' with the specification." Id. at 6.

Plaintiff argues that "the specification makes clear that the distinguishing information associated to impedance in the claims is not limited to 'identifying' information, but instead

7

includes information about an attribute of the device that serves to distinguish it from another device." *Id.* at 5 (citing '012 Patent at 4:48-56). "[T]he disputed phrases," Plaintiff argues, "should be construed to include . . . categorizing information . . . ." *Id.* at 12 (citing '012 Patent at 2:49-58, 5:56-65, 6:19-24, 6:33-41, 13:56-59, 15:60-64 & 15:66-16:4). Plaintiff also argues that Defendants' proposed "requirement that the equipment be 'on the network' or connected to a network is not supported by the intrinsic record." *Id.* at 13. Plaintiff notes that such limitations are set forth in dependent claims, such as Claims 54 and 98 of the '012 Patent. *Id.* at 13-14.

Plaintiff also submits that whereas Claim 9 of the parent '250 Patent[5] recites "information that identifies each piece of equipment and its location on the network," the claims of the '012 Patent do not include such a limitation. *Id.* at 9. Plaintiff further urges that "Defendants['] citation to the prosecution history of the '250 patent does not address the claim language at issue in the '012 patent." *Id.* Finally, Plaintiff argues claim differentiation as to Claims 69 and 71, which depend from independent Claim 67. *Id.* at 8.

As to the proper construction, Plaintiff argues that "[t]he plain and ordinary meaning of this term is apparent from the claim language and there is no need to substitute 'differentiate' as Defendants propose." *Id.* at 12. Plaintiff also cites a July 9, 2014 declaration by its expert, Mr. Les Baxter, testifying that Plaintiff's proposed constructions are the same as one of ordinary skill in art would understand the claim language. *Id.* at 14.

---

[5] U.S. Patent No. 7,457,250. The Court notes that the parent '250 Patent is presently being asserted in *ChriMar Sys., Inc. v. Cisco Sys., Inc.,* No. 4:13-cv-1300, where the Northern District of California has tentatively construed "information about the first [second] piece of equipment / an object" to mean "information sufficient to, but not necessarily limited to, identify or distinguish each piece of equipment or object connected to the network." *ChriMar Sys., Inc. v. Cisco Sys., Inc.,* No. 4:13-cv-1300, Doc. No. 179 at 6 (N.D. Cal. Feb. 3, 2014). As of October 16, 2014, a final construction has not been issued.

B.     **Claim Construction Analysis**

*Claim Differentiation*

As a threshold matter, the Court considers Plaintiff's argument of claim differentiation as to Claims 69 and 71, which depend from Claim 67, which recites:

> 67.  A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:
>    coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and
>    arranging impedance within the at least one path to *distinguish the piece of terminal equipment*.
>
> 69.  The method according to claim 67 wherein the arranging impedance within the at least one path to distinguish the piece of terminal equipment comprises arranging impedance within the at least one path to *uniquely distinguish the piece of terminal equipment*.
>
> 71.  The method according to claim 67 wherein the arranging impedance within the at least one path to distinguish the piece of terminal equipment comprises arranging impedance within the at least one path to *uniquely identify* the piece of terminal equipment.

The only substantive differences between Claim 67 and Claims 69 and 71 are the additions of the phrases "uniquely distinguish" and "uniquely identify," respectively.  Therefore, the doctrine of claim differentiation weighs against requiring unique identification of terminal equipment in Claim 67.  *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("Claim differentiation, while often argued to be controlling when it does not apply, is clearly applicable when there is a dispute over whether a limitation found in a

9

dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims.").

At the September 3, 2014 hearing, Plaintiff also argued claim differentiation as to Claim 33, which recites:

> 33. The piece of Ethernet data terminal equipment according to claim 31 wherein the *distinguishing information* about the piece of Ethernet data terminal equipment associated to impedance within the at least one path *comprises identifying information* about the piece of Ethernet data terminal equipment.

Because this recital of "distinguishing information . . . compris[ing] identifying information" appears in a dependent claim, the doctrine of claim differentiation weighs against construing the "distinguishing" terms to require identification. *See Phillips*, 415 F.3d at 1315; *see also Wenger*, 239 F.3d at 1233.

Defendants argue that the "specification [('012 Patent at 13:13-30)] and these dependent claims [(*id.* at Claims 69 & 71)] are not inconsistent (under the principle of claim differentiation or otherwise) with Defendants' proposed constructions, which are broader and do not require unique identification numbers." REPLY at 2. Further, Defendants argue, "the only plain and logical reading of the claims is that the 'distinguishing information' [must] be distinguishing at the time the equipment is adapted or the method for adapting is being performed or when the claimed 'association' or 'arranging' occurs." *Id.* at 4. Although Defendants claim that their proposed construction of "differentiation" is broader than uniquely distinguish/identify, they fail to point to anything in the intrinsic record supporting that claim. The Court sees no distinction between Defendants' proposal and what is required in Claims 69 and 71. Therefore, such a limitation should not be read into Claim 67. Because Defendants' proposed constructions would require unique identification of terminal equipment, claim differentiation weighs against Defendants' proposed constructions.

*Specification*

Turning to the specification, the term "distinguish" does not appear within the '012 Patent outside of the claim language. The "Technical Field" subsection of the Background of the Invention section states:

> This invention relates generally to computer networks and, more particularly, to a network management and security system for managing, tracking, and *identifying* remotely located electronic equipment on a network.

*Id.* at 1:23-26. The specification recites "identifying" while the claims recite "distinguishing." (emphasis added). Defendants rely on four embodiments focused on identifying: one embodiment that "illustrates the general teachings of the invention," specifically, "achieving *identification* of electronic computer equipment associated with a computer network" and three embodiments that are directed towards *identifying* specific pieces of equipment individually. MOT. at 9 (citing '012 Patent at 4:41-42, 4:46–47, 6:7–9, 4:24-31, 9:1–9, 10:27–30, 11:10–13, 11:57–61, 12:48–13:63, 14:40–52, 15:33–42, and 16:57–64).

However, the specification also repeatedly refers to authorization, status information, and configuration, rather than a unique identification:

> The existence of an unauthorized device connected to the company network may indicate the presence of someone with electronic equipment that has the capability to defeat a company's internal security measures. A method of blocking communications with such a device connected to a network is desirable. *Further, automatically blocking communications with an unauthorized device is desirable.* An active system that interrogates the devices connected to a network and blocks communications with unauthorized devices would provide enhanced security for sensitive information. '012 Patent at 2:49-58.

> Status data encoder 9 receives its status data from the firmware kernel 4. Signal modulator 7 inserts this low power supply across the transmit and receive lines or into either the transmit lines or the receive lines in order to supply the remote module 16 with both *status information and power*. The scope of the invention includes *transmitting status information* as a single bit or as a pulse train. Types of transmitted status information include whether the protection circuit is active, date, time, and port location. *Id.* at 5:56-65.

11

> In addition to transmitting an identification number the firmware kernel 10 may also elect to send additional information such as *confirmation* of the status information or additional data provided by an external device 18, such as the computer 3A to which the remote module 16 is attached. *Id.* at 6:19-24.

> [I]f someone uses a laptop to attempt to plug into the network, the central module 15 detects the absence of the proper identification code from the laptop and, as noted before, kernel 4 would issue *a suitable signal to blocking* circuit 20 to prevent access to the network information and also generate an alarm. Furthermore, if the potential thief later disconnects protected equipment from the network, this action is also detected and an alarm can be generated. *Id.* at 6:33 41.

> The control manager 216 includes a database for storing communicated information such as initial and subsequent locations and *configurations* for identified objects. *Id.* at 13:56 59.

> The control manager 216 evaluates the response from the computer 204a. The evaluation by the control manager 216 includes comparing and updating the configuration and location information of the queried objects with previously stored information in the associated database. The initial physical identity and initial physical location of an object is input to the database during setup of an ID sender tag 202 by an operator such as a user. Information related to the object is also inputted to the database. Related object information includes the object serial number, physical attributes, physical configuration, electronic attributes, software configuration, network attributes, and date of entry. *Id.* at 15:60-16:4.

While Defendants argue that these disclosures relate to information that might be exchanged in addition to distinguishing information used to identify a device (REPLY at 2), they fail to explain why such disclosures should be read in this manner. Defendants appear to respond to the passages solely by pointing to embodiments where the data terminal equipment is uniquely identified. But in light of the above-quoted disclosures it seems that uniquely identifying each piece of data terminal equipment is merely a feature of the preferred embodiments. *E.g., compare* '012 Patent at 6:7-9, *with* '012 Patent at 6:19-24, *and* '012 Patent at 6:43-47. Accordingly, the "distinguishing information" in the claims is not limited to "identifying" information, but instead includes information about an attribute of the device that differentiates it from another device. For example, in the context of distinguishing an unauthorized device from authorized devices, as quoted above, unique identification of an

unauthorized device would presumably be irrelevant. In other words, the specification suggests that once a device is determined to be foreign, access should be blocked, regardless of whether the foreign device can be uniquely identified. Therefore, the unique identification should <u>not</u> be imported into the claims. *See Constant*, 848 F.2d at 1571 ("particular embodiments and examples appearing in the specification will not generally be read into the claims"); *see also Phillips*, 415 F.3d at 1323. It is important to remember that the claims recite "distinguishing," not identifying, making such a reading consistent with the disputed terms themselves. Moreover, Defendants' proposals are disfavored as tending to read out the above-quoted communication of authorization or attribute information. *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification."); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) ("Because the claims themselves do not use the word 'file' and the specification discloses embodiments where the storage format is not a file, we conclude that 'distinct' does not require storage in separate files."). Therefore, the Court finds Defendants' construction improperly attempts to import limitations into the claims and should be rejected.

*Prosecution History*

Finally, the Court considers Defendants' arguments related to the prosecution of the parent '250 Patent. In an Amendment filed February 5, 2008, the '250 patentee applicant distinguished the "De Bruycker" reference (U.S. Patent No. 6,272,219) by stating "[w]hile De Bruycker can loosely be characterized as a network, it is not the type of network that includes dedicated cables to each piece of equipment on the network." Doc. No. 71-2, Ex. K, Feb. 5, 2008 Amendment at 8. Further, the Amendment stated "[s]ince there are no dedicated wires, Applicant's technique for identifying equipment on a network by varying the electrical characteristics across the wires cannot be implemented in De Bruycker…Claim 1 clearly now

13

calls for each piece of equipment to be connected to the central module by its own cable…In the preferred embodiment this [signal] provides an identification signal uniquely associated with the first piece of equipment." *Id.* at 10. The passage shows not only patentee's reliance on the "cable" limitation, but also that the use of an "identification signal uniquely associated with the first piece of equipment" was part of a "preferred embodiment" rather than the claimed invention as a whole. Further, while the Court considers the tentative construction of the '250 Patent in the Northern District of California (MOT. at 12), the claim language in the '250 patent is different than that of the '012 Patent at issue. Defendants have failed to identify any definitive statement as to uniquely identifying each piece of data terminal equipment in the '012 Patent. Instead, the prosecution history offered by the Defendants relates specifically to the claim language in the application for the parent '250 Patent. *Ventana Med. Sys. V. Biogenex Labs*, 473 F.3d 1173, 1182 (Fed. Cir. 2006) ("[T]he doctrine of prosecution disclaimer generally does not apply when the claim term in the descendant patent uses different language."). Thus, Defendants cannot rely on the prosecution history of the parent patent in limiting the scope of the disputed term.

*Construction*

Defendants' proposal of requiring differentiating "each piece" of terminal equipment from "each other piece" of terminal equipment is unclear, is inconsistent with the intrinsic evidence as set forth above, and would likely confuse rather than clarify the scope of the claims. It is particularly unclear whether a piece of terminal equipment would need to be differentiated from every other piece of terminal equipment on a particular network, in a particular location, in the entire world, or in some other context.

Accordingly, the Court construes the disputed terms in accordance with Plaintiff's proposed constructions, as set forth in the following chart:

| Term | Construction |
|---|---|
| "distinguishing information about the piece of Ethernet terminal equipment" (Claim 31) | "information to distinguish the piece of Ethernet data terminal equipment from at least one other piece of Ethernet data terminal equipment" |
| "to distinguish the piece of terminal equipment" (Claim 67) | "to distinguish the piece of terminal equipment having an Ethernet connector from at least one other piece of terminal equipment having an Ethernet connector" |

## II.  Summary Judgment of Non-Infringement

Defendants move for summary judgment of non-infringement based on their proposed constructions for the "distinguishing" terms discussed above. Having rejected Defendants' construction, the Court finds summary judgment improper at the present time and therefore **DENIES** Defendants' Motion without prejudice to re-urging at the dispositive motion stage.[6]

## CONCLUSION

Based on the foregoing constructions, Defendants' Motion for Summary Judgment of Non-infringement is **DENIED**.

So ORDERED and SIGNED this 22nd day of October, 2014.

*[signature]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[6] Defendants should first file a letter brief for such a motion pursuant to the Court's DCO.

15