IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **CHRIMAR SYSTEMS, INC. d/b/a CMS TECHNOLOGIES AND CHRIMAR HOLDING COMPANY, LLC,** <br><br> vs. <br><br> **ALCATEL-LUCENT, INC. et al.,** | § § § § § § § § § § | **Civil No. 6:13-cv-880-JDL** |
| **CHRIMAR SYSTEMS, INC. d/b/a CMS TECHNOLOGIES AND CHRIMAR HOLDING COMPANY, LLC,** <br><br> vs. <br><br> **AMX, LLC.** | § § § § § § § § § § § § | **Civil No. 6:13-cv-881-JDL** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Alcatel-Lucent USA, Inc., Alcatel-Lucent Holdings, Inc., and AMX LLC's (collectively, "Defendants")[1] Motion for Summary Judgment of Indefiniteness. Case No. 6:13cv880, Doc. No. 87; Case No. 6:13cv881, Doc. No. 90 ("Mot.").[2]  Plaintiffs ChriMar Systems, Inc. d/b/a CMS Technologies and Chrimar Holding Company LLC ("Plaintiffs" or "Chrimar") filed a Response (Doc. No. 90) ("Resp.") and Defendants filed a Reply (Doc. No. 94).  The Court additionally considers arguments contained within Plaintiffs' Opening Brief on Claim Construction (Doc. No. 83) ("Pls.' Br."), Defendants' response (Doc. No. 88) and Plaintiffs' reply (Doc No 91).  On October 30, 2014, the Court held a hearing.

---

[1] Defendants Grandstream Networks, Inc. and Samsung Electronics Co., Ltd. have since settled.  *Chrimar Systems, Inc. v. Grandstream Networks, Inc.,* No. 6:13-cv-882, Doc. No. 92; *Chrimar Systems, Inc. v. Samsung Electronics Co., Ltd,* No. 6:13-cv-883, Doc. No. 96.  Defendant Samsung Electronics Co., Ltd. was substituted for Samsung Telecommunications America, LLC.  Doc. No. 94.

[2] Hereinafter, all citations will be to the Docket in Case No. 6:13-cv-880 unless otherwise indicated.

Having considered the parties' arguments and for the reasons stated below, the Court **DENIES** Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiffs allege Defendants infringe independent claims 31 and 67 and dependent claims 35, 42, 43, 49, 50, 55, 66, 72, 73, 77, 88, 89, and 106 ("the asserted claims") of U.S. Patent No. 8,115,012 ("the '012 Patent"). COMPL. The '012 Patent is titled "System and Method for Adapting a Piece of Terminal Equipment," and relates to tracking of devices that are connected to a wired network. '012 Patent. More specifically, the '012 patent describes permanently identifying an "asset," such as a computer, "by attaching an external or internal device to the asset and communicating with that device using existing network wiring or cabling." '012 Patent at 1:67–2:2. Independent claims 31 and 67 are recited as set forth below:

> 31. An adapted piece of Ethernet data terminal equipment comprising:
> an Ethernet connector comprising a plurality of contacts;
> and
> at least one path coupled across selected contacts, the selected contacts
> comprising at least one of the plurality of contacts of the Ethernet
> connector and at least another one of the plurality of contacts of the
> Ethernet connector,
> wherein distinguishing information about the piece of Ethernet data
> terminal equipment is associated to impedance within the at least
> one path.
>
> 67. A method for adapting a piece of terminal equipment, the piece of terminal
> equipment having an Ethernet connector, the method comprising:
> coupling at least one path across specific contacts of the Ethernet
> connector, the at least one path permits use of the specific contacts
> for Ethernet communication, the Ethernet connector comprising
> the contact 1 through the contact 8, the specific contacts of the
> Ethernet connector comprising at least one of the contacts of the
> Ethernet connector and at least another one of the contacts of the
> Ethernet connector; and
> arranging impedance within the at least one path to distinguish the piece of
> terminal equipment.

'012 Patent, claims 31 and 67.

Defendants move for summary judgment that the asserted claims of the '012 Patent are invalid because the following phrases fail to comply with the definiteness requirement of 35 U.S.C. § 112, ¶2: (1) the "distinguishing" terms (claims 31 and 67); and (2) the entire clauses "distinguishing information . . . associated to impedance" (claim 31) and "arranging impedance . . . to distinguish" (claim 67).

In total, there are six disputed terms or phrases in the asserted claims. One term has been construed by the Court following early claim construction briefing and oral argument on September 3, 2014. Doc. No. 92 ("EARLY CLAIM CONSTRUCTION"). In its Order, the Court denied Defendants' summary judgment motion and construed the "distinguishing" term as follows:

| Term | Construction |
|---|---|
| "distinguishing information about the piece of Ethernet terminal equipment" (Claim 31) | "information to distinguish the piece of Ethernet data terminal equipment from at least one other piece of Ethernet data terminal equipment" |
| "to distinguish the piece of terminal equipment" (Claim 67) | "to distinguish the piece of terminal equipment having an Ethernet connector from at least one other piece of terminal equipment having an Ethernet connector" |

EARLY CLAIM CONSTRUCTION at 15.

Following further briefing and oral argument on October 30, 2014, the terms "impedance," "terminal equipment," "Ethernet data terminal equipment," "a method for adapting a piece of terminal equipment" and "an adapted piece of Ethernet data terminal equipment" were construed as follows:

| Term | Construction |
|---|---|
| "impedance" (Claims 31, 35, 50, 67, 73, 77, and 72) | "opposition to the flow of current." |

| "terminal equipment"<br><br>(Claims 67, 72 & 106) | "device at which data transmission can originate or terminate" |
|---|---|
| "Ethernet data terminal equipment"<br><br>(Claims 31, 35, 42, 43, 49, 50 & 55) | "device at which data transmission can originate or terminate and that is capable of Ethernet communication" |
| "a method for adapting a piece of terminal equipment" and "an adapted piece of Ethernet data terminal equipment"<br><br>(Claims 31 and 67) | These preambles *are* limiting and have their plain and ordinary meaning. |

Doc. No. 99 ("CLAIM CONSTRUCTION ORDER").

Pursuant to the parties' briefings and oral argument on October 30, 2014, the Court now considers whether the terms "distinguishing," "distinguishing information . . . associated to impedance," and "arranging impedance . . . to distinguish" are indefinite. Trial is scheduled for September 8, 2015.

## LEGAL STANDARD

**I.  Summary Judgment Standard**

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994); FED. R. CIV. P. 56(c).

**II.  Indefiniteness**

Indefiniteness is a question of law. *Teva Pharms. USA, Inc. v. Sandoz, Inc.,* 723 F.3d 1363, 1368 (Fed. Cir. 2013). "[D]etermination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371, 1376 (Fed. Cir. 2001) *abrogated on other grounds by Nautilus v. Biosig Instruments, Inc.,* - U.S. -, - n. 9, 134 S.Ct. 2120, 2130 n. 9, 189 L.Ed.2d 37 (2014). Indefiniteness is a challenge to the validity of the patent that must be

4

established by clear and convincing evidence. *Nautilus,* 134 S.Ct. at 2230, n. 10 (citing *Microsoft Corp. v. i4i Ltd. Partnership,* - U.S. -, -, 131 S.Ct. 2238, 2242, 180 L.Ed.2d 131 (2011) for the clear-and-convincing standard applicable to challenges to invalidity and declining to alter this standard).

Under 35 U.S.C. § 112 ¶ 2, "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." "A lack of definiteness renders invalid 'the patent or any claim in suit.'" *Nautilus,* 134 S.Ct. at 2125 (citing 35 U.S.C. § 282, ¶ 2(3)). Until recently, a claim was indefinite "only when it [was] not amendable to construction or insolubly ambiguous." *Id.* at 2127. The Supreme Court rejected this standard as too imprecise. *Id.* at 2130.

Under the new standard, "a patent is invalid for indefiniteness if its claims, read in light of the specification ..., and the prosecution history, fail to inform, with *reasonable certainty,* those skilled in the art about the scope of the invention." *Id.* at 2124 (emphasis added). In rejecting the prior standard, the court found it insufficient "that a court [could] ascribe *some* meaning to a patent's claims." *Id.* at 2130. Reasonable certainty is something more precise than insolubly ambiguous, but short of absolute precision. *Id.* at 2129–30. In describing the new standard the court "mandates clarity." *Id.* at 2129.

The Supreme Court noted the "delicate balance" to the indefiniteness analysis. *Id.* at 2128. In summarizing this balance *post-Nautilus,* the Federal Circuit explained that "[t]he definiteness standard 'must allow for a modicum of uncertainty' to provide incentives for innovation, but must also require '*clear notice* of what is claimed, thereby appris[ing] the public of what is still open to them.'" *Interval Licensing LLC v. AOL,* 766 F.3d 1364, 1370 (Fed. Cir. 2014) (emphasis added) (quoting *Nautilus,* 134 S.Ct. at 2128–29).

The Supreme Court did not apply the new standard in *Nautilus*.[3] The Federal Circuit, however, has both applied the new standard and provided guidance on the level of precision required. *Interval,* 766 F.3d at 1369–71. "Although absolute precision or mathematical precision is not required, it is not enough as some of the language in ... prior cases may have suggested, to identify 'some standard for measuring the scope of the phrase.'" *Id.* at 1370–71 (quoting *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1351 (Fed. Cir. 2005)). "The claims, when read in light of the specification and the prosecution history, must provide *objective boundaries* for those of skill in the art." *Id* at 1371 (emphasis added) (relying on *Nautilus,* 134 S.Ct. at 2130 & n. 8). In noting the necessity for objective boundaries, the Federal Circuit relied on the finding in *Halliburton Energy Servs., Inc. v. M–I LLC* that "[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into *meaningfully precise* claim scope." *Id.* (emphasis added) (relying on *Halliburton,* 514 F.3d 1244, 1251 (Fed. Cir. 2008)).

Other parts of the indefiniteness inquiry remain the same. Indefiniteness is still "evaluated from the perspective of someone skilled in the relevant art at the time the patent was filed." *Nautilus,* 134 S.Ct. at 2128. Claims must also still "be read in light of the patent's specification and prosecution history." *Id.* at 2128.

## DISCUSSION

---

[3] The court declined to apply the new "reasonable certainty" standard to the claim language at issue in *Nautilus*, "mounted ... in spaced relationship with each other." *Nautilus,* 134 S.Ct. at 2131. The language describes the location of two electrodes on a cylinder held in the user's hand. *Id*. at 2127. In concluding the language was not indefinite, the reversed Federal Circuit decision had concluded the spaced relationship could not be greater than the width of a user's hand. *Id*. at 2127.

**I.** **"distinguishing information about the piece of Ethernet terminal equipment" and "to distinguish the piece of terminal equipment"**

As discussed above, the Court construed these terms in its Early Claim Construction Opinion as set forth below:

| Term | Construction |
|---|---|
| "distinguishing information about the piece of Ethernet terminal equipment" (Claim 31) | "information to distinguish the piece of Ethernet data terminal equipment from at least one other piece of Ethernet data terminal equipment" |
| "to distinguish the piece of terminal equipment" (Claim 67) | "to distinguish the piece of terminal equipment having an Ethernet connector from at least one other piece of terminal equipment having an Ethernet connector" |

EARLY CLAIM CONSTRUCTION at 15.

In its renewed summary judgment arguments, Defendants argue the claim terms as construed[4] are indefinite because determining whether infringement occurred requires comparison of the accused "distinguishing" device with an "unspecified device." MOT. at 4. More specifically, because "the determination of infringement is dependent on factors wholly outside the alleged infringer's control," "a person of ordinary skill in the art would not know if an Ethernet device standing alone is within the scope of the claim or not." *Id.* at 4-5. Further, the "construction essentially preempts all information, as any information can later be used to be 'distinguishing.'" *Id.* at 6.

In response, Plaintiffs' expert proffers that "one of ordinary skill in the art knows that certain information about a piece of equipment varies among pieces of equipment…Thus one of ordinary skill in the art does not need to have a specific piece of equipment for comparison to know whether certain information (e.g. processor type) distinguishes a piece of equipment from

---

[4] The Court notes Defendants motion was submitted prior to the issuance of its Early Claim Construction Order which substantially adopted Plaintiffs early proposed constructions of the term "distinguishing." However, Defendants' instant arguments are based on the Court adopting Plaintiffs' constructions. Defendants' reply brief was filed after the Court issued the Early Claim Construction.

at least one other piece of equipment." Doc. No. 90-2, Ex. B ¶ 43, Decl. of Les Baxter ("Baxter Decl.").

As enumerated above, a claim is indefinite if, when viewed in light of the intrinsic evidence, it fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus,* 134 S. Ct. at 2129. The Federal Circuit has since applied *Nautilus* to hold that, to be definite, "the claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371-74 (Fed. Cir. 2014) (finding that the term "unobtrusive manner" rendered claims invalid as indefinite).

Defendants properly note that "[a] claim can be found indefinite even if it is subject to being construed." MOT. at 5 n.4; *see Nautilus,* 134 S. Ct. at 2127 (vacating reversal of district court grant of summary judgment that the term "spaced relationship," as construed, was indefinite). Also, "[w]hen a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the composition may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite." *Halliburton*, 514 F.3d at 1246.

Defendants have cited two Federal Circuit cases proffering that the court rejected constructions in both as indefinite. MOT. at 4 (citing *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003) and *Halliburton*). In *Geneva*, Defendants argue that the court rejected a proposed construction as "the epitome of indefiniteness" because the formulation at issue "might infringe or not depending on its usage in changing circumstances" *Id.* (citing *Geneva*, 349 F3d at 1373). However, it appears that the court instead

rejected a proposed construction to read an additional limitation into the claim term at issue where it found that "effective amount" is "a common and generally acceptable term for pharmaceutical claims and is not ambiguous or indefinite, provided that a person of ordinary skill in the art could determine the specific amounts without undue experimentation." 349 F.3d at 1383-84. *Geneva* further found that "synergistically effective amount" means "any amount that is synergistic against any bacteria." *Id.* at 1384. *Geneva* thus did *not* find "synergistically effective amount" to be indefinite but instead rejected a proposed interpretation in which "GSK [sought] to read more into these claim terms to make the dosage range depend on the particular antibiotic and bacteria." *Id.* Likewise, *Halliburton* is distinguishable from the instant case for essentially the same reasons. *Halliburton*, 514 F.3d at 1256 (concluding that because neither Halliburton's proposed definition nor any other possible construction resolved the ambiguity in the scope of the term "fragile gel," the claims containing that term were indefinite). While the Federal Circuit in *Halliburton* demanded "meaningfully precise claim scope" and that the specification of the patent provide "specifics," an accused infringer must provide clear and convincing evidence that the boundaries of a claim cannot be discerned by a person of ordinary skill in the art based on the claim language, information contained in the specification, the prosecution history, as well as that skilled person's knowledge of the relevant art. *Id*.

As to the claim language at issue here, claims 31 and 67 of the '012 Patent recite as follows:

> 31. An adapted piece of Ethernet data terminal equipment comprising:
>     an Ethernet connector comprising a plurality of contacts; and
>     at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector,
>     wherein *distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path.*

9

'012 Patent, claim 31 (emphasis added).

> 67. A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:
> coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and
> *arranging impedance within the at least one path to distinguish the piece of terminal equipment.*

'012 Patent, claim 67 (emphasis added).

On their face, claims 31 and 67 require more than merely distinguishing. The disputed terms refer to an impedance that represents some characteristic of a piece of terminal equipment so that by measuring the impedance, one piece of terminal equipment can be distinguished from some other piece of terminal equipment based on that characteristic. Rather than merely attempting to claim the function of distinguishing, the patentee claimed using impedance to identify a characteristic, and that characteristic can distinguish pieces of equipment. Possible characteristics include equipment processor type, hard drive capacity, authorization information, physical attributes, physical configuration, electronic attributes, software configuration, network attributes, and date of entry. '012 Patent, 4:48-53, 2:49-58, 6:33-41, 15:67-16:4. Thus one of ordinary skill in the art does not need to have a specific piece of equipment for comparison to know whether certain characteristics can distinguish a piece of equipment from at least one other piece of equipment.

Further, as discussed in the Early Claim Construction, the specification and embodiments of the '012 Patent refer to authorization, status information, and configuration. EARLY CLAIM CONSTRUCTION at 11. Thus, because the "distinguishing information" in the claims is not

10

limited to "identifying" information, the Court rejected Defendants' constructions, finding that the constructions "improperly attempt[] to import limitations into the claims." *Id*. at 13. This is distinguishable from Defendants' characterizations of *Geneva* and *Halliburton* because rather than rejecting a proposed construction as ambiguous, the Court's construction of "distinguishing" rejected Defendants' attempt to read in additional limitations.

Because Defendants have failed to proffer clear and convincing evidence supporting a finding of indefiniteness, Defendants' motion for summary judgment of indefiniteness is **DENIED** as to the "distinguishing" terms as construed by the Court.

## II. "arranging impedance within the at least one path"

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning. No construction necessary. | Indefinite |

PLS.' BR. at 11; RESP. at 15. This disputed term appears in Claims 67, 72, 73, and 77. *Id.*

Defendants argue that the disputed term is indefinite because "[t]here is no way for a person of ordinary skill in the art to determine whether an impedance measurement is arranged or associated to distinguish because a basis for making that determination is not provided within the claimed subject matter." MOT. at 2. Additionally, Defendants argue "[Plaintiffs'] expert deems a non-PoE Ethernet device just as distinguishable as four other PoE compliant Ethernet devices because the non-PoE device does not comply with the standard," and Defendants urge that "[t]his inability to distinguish the claimed invention from the admitted prior art (non-PoE device), renders the claims indefinite." *Id.* at 7. Finally, Defendants argue that claim 67's "*arranging* language is indefinite because it fails to provide any objective basis to discern what is required for impedance on the circuit" and "fails to recite any circuit components (or any other discrete devices) in any particular manner. One cannot *arrange* impedance just as one cannot *arrange* length, temperature, or other measurable characteristics." *Id.* at 8.

11

Plaintiffs contend that "[t]he term 'arranging'—and arranging impedance within the at least one path—means just what it says, is readily comprehensible, and does not require construction." PLS.' BR.. at 12. Specifically, Plaintiffs argue that if Defendants propose that "arranging" means "varying," "Defendants' alternative proposal would amount to nothing more than an unsupported attempt to alter the meaning of 'arrange' so that Defendants can later advance a non-infringement argument that 'arranging the impedance' somehow requires the impedance to be changed, altered, or varied when the accused products are in operation." *Id.* at 13.

Turning to the claims at issue, claim 67 is the only independent claim where the disputed term appears and is reiterated below:

> 67. A method for adapting a piece of terminal equipment, the piece of terminal equipment having an Ethernet connector, the method comprising:
>   coupling at least one path across specific contacts of the Ethernet connector, the at least one path permits use of the specific contacts for Ethernet communication, the Ethernet connector comprising the contact 1 through the contact 8, the specific contacts of the Ethernet connector comprising at least one of the contacts of the Ethernet connector and at least another one of the contacts of the Ethernet connector; and
>   *arranging impedance within the at least one path* to distinguish the piece of terminal equipment.

'012 Patent, claim 67 (emphasis added). A read of the related dependent claims suggest that "arranging" need not occur when a device is in operation but instead could occur at some other time. Specifically, dependent Claims 87, 95, 96, and 99 recite:

> 87. The method according to claim 67 wherein the piece of terminal equipment is *powered-on.*

'012 Patent, claim 87 (emphasis added).

> 95. The method according to claim 67 wherein the specific contacts are used for Ethernet communication and at least some of the specific contacts are *actually carrying DC current*.

12

'012 Patent, claim 95 (emphasis added).

> 96. The method according to claim 67 wherein the specific contacts are used for Ethernet communication and at least some of the specific contacts are *actually carrying Ethernet signals and DC current.*

'012 Patent, claim 96 (emphasis added).

> 99. The method according to claim 67 further comprising at least one *electrical condition* applied to the specific contacts.

'012 Patent, claim 99 (emphasis added). The parties addressed whether "arranging impedance" might be interpreted as requiring varying impedance during operation. The dependent claims refer to a piece of equipment being "powered-on" or "actually carrying" current, which implies that the "arranging impedance" limitation in claim 67 can be satisfied regardless of whether the equipment is powered-on. Thus, to whatever extent Defendants maintain that there is an irreconcilable ambiguity as to whether "arranging" requires the equipment to be in operation, the dependent claims weigh against Defendants' position.

Defendants' argument regarding whether a person of ordinary skill in the art could determine whether an impedance is arranged to distinguish is akin to arguing that a means-plus-function term is indefinite because insufficient structure is disclosed. Defendants have not argued that the "arranging" term is a means-plus-function term subject to 35 U.S.C. § 112, ¶ 6. Further, Defendants have not identified any requirement that arranging be accomplished with a particular structure or particular "circuit components." MOT. at 2. Instead, the claims merely require that a device is configured to have an impedance that gives some distinguishing information about the device.

Additionally, Defendants' arguments are primarily directed to whether particular accused instrumentalities or processes infringe. However, arguments regarding whether instrumentalities

or processes infringe is not proper at this stage of the litigation. That determination is for a finder of fact. *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact."). Further, the test for indefiniteness is not whether a prior art device would infringe. Instead, the test is whether the claim read in light of the specification delineating the patent, and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus*, 134 S. Ct. at 2124. Overall, Defendants have failed to demonstrate indefiniteness under this standard. Therefore, the Court **DENIES** Defendants' summary judgment arguments and construes **"arranging impedance within the at least one path"** to have its **plain meaning.**

### III. "wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path"

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning. No construction necessary. | Indefinite.<br><br>*Alternatively:*<br>    "distinguishing information about the piece of Ethernet data terminal equipment" and "impedance" as used in this phrase have the same meanings as in their individually proposed constructions |

PLS.' BR. at 15; RESP. at 20. This disputed term appears in Claim 31. *Id.*

Defendants argue this disputed term is indefinite because "[w]hether an impedance in an accused device is associated with distinguishing information requires a comparison to some other unclaimed, undisclosed device." MOT. at 7-8. Defendants additionally contend Plaintiffs have "made no attempt to provide context and clarity regarding this phrase from the intrinsic record,

14

because it cannot." Doc. No. 88 at 21. Finally, Defendants argue, "[t]o the extent associated pertains to conducting an associating act, claim 31 violates the bar against the mixing of statutory classes of apparatus and method claims. The act by which distinguishing information is/was associated to impedance constitutes a method step that happens by some actor at some unspecified time, and the lack of clarity regarding when infringement would occur renders apparatus claim 31 indefinite." MOT. at 8.

Plaintiffs submit that "impedance" and "distinguishing information about the piece of Ethernet data terminal equipment" have been addressed separately by the parties, and that the remainder—"associated to impedance within the at least one path"—"contains simple words that are readily comprehensible and do not require construction." PLS.' BR. at 16.

"[R]eciting both an apparatus and a method of using that apparatus renders a claim indefinite under [35 U.S.C.] section 112, paragraph 2." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005); *see H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1336 (Fed. Cir. 2014) (citing *IPXL* and finding that "it is unclear here when infringement would occur").

Claim 31 of the '012 Patent recites:

31. An adapted piece of Ethernet data terminal equipment comprising:
    an Ethernet connector comprising a plurality of contacts; and
    at least one path coupled across selected contacts, the selected contacts comprising at least one of the plurality of contacts of the Ethernet connector and at least another one of the plurality of contacts of the Ethernet connector,
        wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path.

'012 Patent, claim 31 (emphasis added).

The Court notes that the phrase "is associated" merely refers to configuration and does not give rise to a method step. *See, e.g., Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-01550 SI,

2006 WL 3456610 (N.D. Cal. Nov. 29, 2006) (Illston, J.) ("[The claims at issue] describe what the apparatuses do, when used a certain way.  They do not claim use of the apparatuses").  Therefore, the indefiniteness rationale in *IPXL* does not apply here.  Further, Defendants' remaining indefiniteness arguments should be rejected for the same reasons set forth as to the term "arranging impedance within the at least one path," addressed above, namely, the test for indefiniteness is not whether a prior art device would infringe.  Arguments regarding whether instrumentalities or processes infringe is not proper at this stage of the litigation.  Therefore, the Court finds no further construction is necessary.

The Court accordingly finds the term definite and construes "**wherein distinguishing information about the piece of Ethernet data terminal equipment is associated to impedance within the at least one path**" to have its **plain meaning.**

### CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **DENIED**.

**So ORDERED and SIGNED this 16th day of January, 2015.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE